# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

MAURICE JEWELL, JR, on behalf of himself
and others similarly situated,

                    Civil Action No. 19-cv-247

        Plaintiff,

       v.                  Magistrate Judge Stephen L. Crocker

HSN, INC.,

        Defendant.

## HSN'S BRIEF IN SUPPORT OF ITS
## MOTION TO COMPEL ARBITRATION AND DISMISS

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................... 1

BACKGROUND ............................................................................................................... 1

I.       PLAINTIFF'S ALLEGATIONS ............................................................................ 1

II.      HSN.......................................................................................................................... 1

III.     THE HSN CARD...................................................................................................... 2

         A.       Relevant Provisions of the HSN Card Agreement.................................... 3

         B.       Plaintiff Is Bound By the Terms of the Arbitration Provision................... 5

IV.      HSN CALLED PLAINTIFF TO COLLECT PAST DUE AMOUNTS
         PLAINTIFF AGREED WOULD BE BILLED TO HIS HSN CARD ..................... 6

V.       PLAINTIFF FILES FOR BANKRUPTCY ............................................................. 7

LEGAL STANDARD......................................................................................................... 7

ARGUMENT ...................................................................................................................... 8

I.       AN ENFORCEABLE ARBITRATION AGREEMENT IS IN EFFECT ........................ 8

         A.       Plaintiff Agreed to the Arbitration Provision........................................... 8

         B.       Courts Have Routinely Enforced Identical or Substantially Similar
                  Arbitration Provisions ............................................................................. 9

         C.       HSN Is Entitled to Enforce the Agreed Upon Arbitration Provision................... 11

                  1.       Choice of Law ............................................................................ 11

                  2.       HSN Is a Party to the Arbitration Provision .............................. 11

                  3.       HSN Can Enforce the Arbitration Provision Under Third-Party
                           Beneficiary and Estoppel Principles. ......................................... 13

II.      PLAINTIFF'S CLAIMS FALL WITHIN THE SCOPE OF THE ARBITRATION
         PROVISION ......................................................................................................... 17

III.     PLAINTIFF REFUSES TO ARBITRATE......................................................... 19

CONCLUSION.................................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alsaber v. Comenity Capital Bank*,
No. 17-4499, Dkt. 9, 11 (N.D. Ill. filed June 14, 2017)........................................................10

*American Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)...............................................................................................................18

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009)...............................................................................................................14

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)...........................................................................................................8, 18

*AT&T Tech. v. Comm. Workers of Am.*,
475 U.S. 643 (1986).................................................................................................................8

*Barker v. Comenity Bank*,
No. 18-1299, Dkt. 7, 8 (M.D. Pa. filed June 27, 2018)...........................................................10

*Barnauskas v. Comenity Bank*,
No. 17-1121, Dkt. 22 (M.D. Pa. filed June 26, 2017).............................................................10

*Battle v. Nissan Motor Acceptance Corp.*,
No 05-0669, 2006 U.S. Dist. LEXIS 37916 (E.D. Wis. March 9, 2006) ...........................8, 18

*Branca v. Comenity Bank*,
No. 17-3527, Dkt. 4 (N.D. Ga. filed Sept. 14, 2017)..............................................................10

*Clemins v. Alliance Data Sys. Corp.*,
No. 11-36, Dkt. 29, 40 (E.D. Wis. filed Jan. 13, 2011) ......................................................9, 19

*Continental Cas. Co. v. Am. Nat'l Ins. Co.*,
417 F.3d 727 (7th Cir. 2005) .................................................................................................11

*Dawson v. Dawson*,
841 P.2d 749 (Ut. Ct. App. 1992) ..........................................................................................12

*Draga v. Comenity Bank Corp.*,
No. 16-2645, Dkt. 14 (S.D. Ind. filed Oct. 4, 2016) ...............................................................10

*Draughon v. CUNA Mut. Ins. Soc'y*,
771 P.2d 1105 (Ut. Ct. App. 1989) ........................................................................................11

*Ellsworth v. Am. Arbitration Ass'n*,
2006 UT 77 ..........................................................................................................14

*Faulkenberg v. CB Tax Franchise Sys., LP*,
637 F.3d 801 (7th Cir. 2011) ...................................................................7, 8, 11

*Fire Ins. Exch. v. Oltmanns*,
2018 UT 10 ..........................................................................................................11

*Frazier v. Comenity LLC*,
No. 16-25361, Dkt. 24 (S.D. Fla. filed Dec. 28, 2016)........................................10

*Gibson v. Wal-Mart Stores, Inc.*,
181 F.3d 1163 (10th Cir. 1999) ..........................................................................16

*Grasty v. Colo. Tech. Univ.*,
599 F. App'x 596 (7th Cir. 2015) ..........................................................................7

*Greene v. Comenity LLC*,
No. 17-1, Dkt. 18 (M.D. Fla. filed Jan. 3, 2017) ................................................10

*Grigson v. Creative Artists Agency, L.L.C.*,
210 F.3d 524 (5th Cir. 2000) ........................................................................15, 17

*Gunson v. BMO Harris Bank, N.A.*,
43 F. Supp. 3d 1396 (S.D. Fla. 2014) .................................................................16

*Harris v. Comenity, LLC*,
No. 18-1228, Dkt. 14 (N.D. Ga. filed Mar. 23, 2018) .........................................10

*Holland America Line Inc. v. Wärtsilä North America, Inc.*,
485 F.3d 450 (9th Cir. 2007) ..............................................................................16

*Hughes Masonry Co. v. Greater Clark County Sch. Bldg. Corp*,
659 F.2d 386 (7th Cir. 1981) ...............................................................14, 15, 17

*Hurley v. Comenity Bank*,
No. 17-222, Dkt. 21 (N.D. Fla. filed Aug. 31, 2017)...........................................10

*I-Link v. Red Cube Int'l A.G.*,
No. 01-49, 2001 U.S Dist. LEXIS 1609 (D. Ut. Feb. 9, 2001)........................14, 16

*Inception Mining, Inc. v. Danzig, Ltd.*,
312 F. Supp. 3d 1271 (D. Ut. 2018)....................................................................14

*Ingram v. Comenity Bank*,
No. 16-2807, Dkt. 9, 10 (D. Nev. Dec. 6, 2016)..................................................10

*Int'l Paper Co. v. Schwabdiessen Maschinsen & Analgen GMBH,*
    206 F.3d 411 (4th Cir. 2000) ................................................15

*Jackson v. Comenity Bank,*
    No. 16-1133, 2016 U.S Dist. LEXIS 144432 (D. Minn. Oct. 18, 2016) ............................9, 19

*Javitch v. First Union Sec., Inc.,*
    315 F.3d 619 (6th Cir. 2003) ................................................15

*JLM Indus. v. Stolt-Nielson SA,*
    387 F.3d 163 (2d Cir. 2004) ................................................15

*Johnson v. Discover Bank,*
    No. 17-412, 2018 U.S. Dist. LEXIS 23145 (W.D. Wis. Feb. 12, 2018) ............................8, 17

*Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.,*
    174 F.3d 907 (7th Cir. 1999) ................................................8, 17

*Kremers-Urban Co. v. Am. Emp'rs Ins. Co.,*
    119 Wis. 2d 722 (1984) ................................................12

*Kuhn v. Ret. Bd. Pub. Emples. Health Program,*
    2015 UT App. 18 ................................................11

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,*
    460 U.S. 1 (1983) ................................................8

*MS Dealer Serv. Corp. v. Franklin,*
    177 F.3d 942 (11th Cir. 1999) ................................................16

*Olstad v. Chase Auto Fin. Corp.,*
    No. 17-236, 2018 US. Dist. LEXIS 9289 (W.D. Wis. Jan. 22, 2018) ................................7, 8

*Payless Shoesource Inc. v. Travelers,*
    585 F.3d 1366 (10th Cir. 2009) ................................................12

*Penn. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n,*
    713 F. Supp. 2d 734 (N.D. Ill. 2010) ................................................14, 16

*Perry v. Thomas,*
    482 U.S. 483 (1987) ................................................8

*Podolsky v. Comenity Capital Bank,*
    No. 16-4075, Dkt. 17 (D.N.J. filed July 7, 2016) ................................................11

*Smargon v. Grand Lodge Partners, LLC,*
    2012 UT App. 305 ................................................13

iv

*Solid Q Holdings LLC v. Arenal Engery Co.*,
2015 UT App. 272 ....................................................................................14, 16

*Spear, Leeds & Kellog v. Central Life Assurance Co.*,
85 F.3d 21 (2d Cir. 1996)...........................................................................15

*Thomas v. Comenity LLC*,
No. 17-2494, Dkt. 36 (M.D. Fla. filed Oct. 24, 2017) ............................10

*Thompson v. Sutherland Global Servs.*,
No. 17-3607, 2019 U.S. Dist. LEXIS 57539 (N.D. Ill. Apr. 3, 2019) ....................................12

*Tickanen v. Harris & Harris, Ltd.*,
461 F. Supp. 2d 863 (E.D. Wis. 2006)...............................................15

*Villalobos v. EZ Corp.*,
No. 12-852, 2013 U.S. Dist. LEXIS 97998 (W.D. Wis. Jul. 12, 2013)....................................18

*Wal-Mart Stores, Inc. v. Helferich Patent Licensing, LLC*,
51 F. Supp. 3d 713 (N.D. Ill. 2014) .........................................................8

*Wood v. Portfolio Recovery Assocs., LC*,
No. 14-3044, 2015 U.S. Dist. LEXIS 188186 (M.D. Fla. Apr. 1, 2015)...........................9, 19

*Zarandi v. Alliance Data Sys.*,
No. 10-8309, 2011 U.S. Dist. LEXIS 54602 (C.D. Cal. May 9, 2011) ..............................9, 19

*Zurich Am. Ins. v. Watts*,
466 F.3d 577 (7th Cir. 2006) ....................................................................8

**Statutes**

Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 *et seq.* ...............................1, 8

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(3) .......................................................7

AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE ...................................12

COLLINS DICTIONARY .....................................................................................12

MERRIAM-WEBSTER DICTIONARY .......................................................................12

OXFORD LIVING DICTIONARIES ........................................................................12

56574113v.4

Defendant HSN, Inc. ("HSN")[1] submits this Brief in Support of its Motion to Compel Arbitration and Dismiss all claims made by Plaintiff Maurice Jewell, Jr. ("Plaintiff" or "Jewell").

## INTRODUCTION

This case arises from Plaintiff's failure to fully pay for purchases he made from HSN using his HSN Card, and the resulting calls made by HSN to collect that debt. Plaintiff's claims cannot properly be heard in this Court because Jewell has agreed to arbitrate such disputes. Jewell has also specifically agreed to delegate all questions of arbitrability to an arbitrator and to waive his right to participate in a class action, either as a class representative or a class member. Pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 *et seq*., this agreement must be enforced, and Plaintiff's lawsuit must be dismissed or, in the alternative, stayed pending arbitration.

## BACKGROUND

### I.    Plaintiff's Allegations

Plaintiff alleges that he "initiated one or more transactions pursuant to an open-end credit plan with Defendant [HSN]" and that HSN called his cell phone in an attempt to collect amounts due under the credit plan. ("HSN Calls") (Compl. ¶¶ 15-18, 68). Plaintiff contends that the HSN Calls violated the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, *et seq,* and the Wisconsin Consumer Act (WCA), WIS. STAT. § 427.101, *et seq.* Plaintiff purports to bring the claims on behalf of himself and a putative nationwide class.

### II.   HSN

HSN is a leading retailer of apparel, home goods, electronics, beauty products, jewelry, and other items. (Declaration of Kolleen Carroll ¶ 3 ("Carroll Decl."), attached as **Exhibit 1**). HSN operates a website, www.hsn.com, through which customers can order products online. (*Id*.

---

[1] Plaintiff has incorrectly named HSN, Inc. as the defendant. HSNi, LLC is the operational subsidiary of HSN, Inc.

¶ 4).  Plaintiff became an HSN customer on July 26, 2015 and, in doing so, voluntarily provided HSN with his mobile phone number ending in 8140.  (*Id.* ¶ 18).

For certain purchases, HSN offers customers an option to use "FlexPay."  (Carroll Decl. ¶ 11).  FlexPay is an installment program that allows HSN customers to receive their purchase without having to pay the full amount up front.  (*Id.* ¶ 12).  Rather, billing is split into multiple, smaller payments, over two or more months.  (*Id.*).  At the time of purchase, HSN bills the customer's credit card for the first payment plus tax, shipping and handling.  (*Id.* ¶ 13).  Remaining payments are automatically billed to the credit card account used by the customer to make the purchase.  (*Id.*).  Payments are billed every 30 days, beginning 30 days after the customer's original order date.  (*Id.* ¶ 14).

### III.    The HSN Card

HSN partners with Comenity Capital Bank ("Comenity") to offer HSN customers a co-branded, private label credit card known as the HSN Card.  (*Id.* ¶ 7).  The HSN Card can only be used for purchases at HSN, and nowhere else.  (*Id.* ¶ 8).  HSN promotes the HSN Card on its website, and HSN customers can learn about, apply for and pay their HSN Card bill through www.hsn.com.  (*Id.* ¶ 10).

Plaintiff applied for the HSN Card on April 16, 2016.  (Declaration of Andrea K. Dent ¶ 6 ("Dent Decl."), attached as **Exhibit 2**).  Upon approval of his application, a credit card account was created for Plaintiff, specifically, HSN account number ending in 2397.  (*Id.*).  On April 18, 2016, Plaintiff's HSN Card was mailed to him.  (*Id.* ¶ 8).  The HSN Card Agreement attached as Exhibit A to the Dent Declaration was in effect at the time that Plaintiff opened the Account and was included in the mailing with his HSN Card.  (*Id.* ¶¶ 7-8 and Exhibit A thereto).

2

## A.    Relevant Provisions of the HSN Card Agreement

The HSN Card Agreement provides in relevant part as follows:

> This Agreement covers the Terms and Conditions of your account with us.  In this document, you will find important information about using and managing your account, including a Privacy Statement and information concerning your billing rights.  Your use of the account, or failure to close the account within 30 days of receiving this document, indicates your acceptance of the terms in this agreement, including the assessment of any interest charges and fees.
>
> **Section I of this Agreement also includes a Jury Trial Waiver and an Arbitration Provision in the event of a dispute.**
>
> - **You have a right to reject this Arbitration Provision.**
>
> - **If you do not reject this Arbitration Provision, it will be part of this Agreement and will:**
>
>   o   **Eliminate your right to a trial by jury; and**
>
>   o   **Substantially affect your rights, including your right to bring, join in or participate in class pleadings.**
>
> Please read each section carefully and keep this document for your records.

(*See* HSN Card Agreement, attached hereto as Ex. 1-A).

The HSN Card Agreement also contains the following arbitration provision and class action waiver:

### I.  Arbitration and jury trial waiver

\*   \*   \*   \*

### C.  Arbitration provision

**READ THIS ARBITRATION PROVISION CAREFULLY. IF YOU DO NOT REJECT THIS ARBITRATION PROVISION IN ACCORDANCE WITH PARAGRAPH C.1. BELOW, IT WILL BE PART OF THIS AGREEMENT AND WILL HAVE A SUBSTANTIAL IMPACT ON THE WAY YOU OR WE**

3

**WILL RESOLVE ANY CLAIM WHICH YOU OR WE HAVE AGAINST EACH OTHER NOW OR IN THE FUTURE.**

**1.   Your Right to Reject: If you don't want this Arbitration Provision (and any prior arbitration agreement between you and us ("Prior Arbitration Agreement")) to apply, you may reject it by mailing us a written rejection notice which gives the name of each Cardholder and contains a statement that you (both of you, if more than one) reject the Arbitration Provision of this Agreement. The rejection notice must be sent to us at Comenity Capital Bank, PO Box 182422, Columbus, Ohio 43218-2422. A rejection notice is only effective if it is signed by you (all of you, if more than one) and if we receive it within thirty (30) calendar days after the date we first provide you with a credit card agreement or written notice providing you a right to reject this Arbitration Provision. Your rejection of this Arbitration Provision will not affect any other provision of this Agreement or your ability to obtain credit.**

**2.   Parties Subject to Arbitration:** Solely as used in this Arbitration Provision (and not elsewhere in this Agreement), the terms "we," "us" and "our" mean (a) Comenity Capital Bank, any parent, subsidiary or affiliate of the Bank and the employees, officers and directors of such companies (the "Bank Parties"); and (b) any other person or company that provides any services in connection with this Agreement if you assert a Claim against such other person or company at the same time you assert a Claim against any Bank Party.

**3.   Covered Claims:** "Claim" means any claim, dispute or controversy between you and us that in any way arises from or relates to this Agreement, the Account, the issuance of any Card, any rewards program, any prior agreement or account.

"Claim" includes disputes arising from actions or omissions prior to the date any Card was issued to you, including the advertising related to, application for or approval of the Account. "Claim" has the broadest possible meaning, and includes initial claims, counterclaims, cross-claims and third-party claims. It includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity (including any claim for injunctive or declaratory relief). "Claim" does not include disputes about the validity, enforceability, coverage or scope of this Arbitration Provision or any part thereof (including, without limitation, the prohibition against class proceedings, private attorney general proceedings and/or multiple party proceedings described in

4

Paragraph C.7 (the "Class Action Waiver"), the last sentence of Paragraph C.13 and/or this sentence); all such disputes are for a court and not an arbitrator to decide. However, any dispute or argument that concerns the validity or enforceability of the Agreement as a whole is for the arbitrator, not a court, to decide.

\* \* \* \*

**6. Court and Jury Trials Prohibited; Other Limitations on Legal Rights: IF YOU OR WE ELECT TO ARBITRATE A CLAIM, YOU WILL NOT HAVE THE RIGHT TO PURSUE THAT CLAIM IN COURT OR HAVE A JURY DECIDE THE CLAIM. ALSO, YOUR ABILITY TO OBTAIN INFORMATION FROM US IS MORE LIMITED IN AN ARBITRATION THAN IN A LAWSUIT. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION.**

**7. Prohibition Against Certain Proceedings: IF YOU OR WE ELECT TO ARBITRATE A CLAIM: (1) NEITHER YOU NOR WE MAY PARTICIPATE IN A CLASS ACTION IN COURT OR IN CLASS-WIDE ARBITRATION, EITHER AS A PLAINTIFF, DEFENDANT OR CLASS MEMBER; (2) NEITHER YOU NOR WE MAY ACT AS A PRIVATE ATTORNEY GENERAL IN COURT OR IN ARBITRATION; (3) CLAIMS BROUGHT BY OR AGAINST YOU MAY NOT BE JOINED OR CONSOLIDATED WITH CLAIMS BROUGHT BY OR AGAINST ANY OTHER PERSON; AND (4) THE ARBITRATOR SHALL HAVE NO POWER OR AUTHORITY TO CONDUCT A CLASS-WIDE ARBITRATION, PRIVATE ATTORNEY GENERAL ARBITRATION OR MULTIPLE-PARTY ARBITRATION.**

(*Id.* § I.C).

B. **Plaintiff Is Bound By the Terms of the Arbitration Provision**

The HSN Card Agreement expressly provides: "Your use of the account, or failure to close the account within the 30 days of receiving this document, indicates your acceptance of the terms of this agreement." (*See* HSN Card Agreement). Plaintiff used the HSN Card to make purchases from HSN (Dent Decl. ¶ 12; Carroll Decl. ¶¶ 23, 29) and, in doing so, effectively accepted the terms of the HSN Card Agreement.

5

As referenced above, the HSN Agreement also provides individuals with an opportunity to opt out of the Arbitration Provision.  Plaintiff did not elect to opt out of the Arbitration Provision. (Dent Decl. ¶¶ 10-11).

## IV.    HSN Called Plaintiff to Collect Past Due Amounts Plaintiff Agreed Would Be Billed to His HSN Card

Plaintiff alleges that HSN repeatedly called his cell phone between May 15, 2017 and July 26, 2017.  (Compl. ¶ 18).   Each of these calls was for the purpose of attempting to collect payment of past due amounts that Plaintiff agreed were to be billed to the HSN Card.  (Carroll Decl. ¶ 20).

On November 28, 2016, Plaintiff used his HSN Card to place Order No. 1376933257 for an "Officially Licensed NFL Life Above Long-Sleeve Tee PACKERS SIZE X-LARGE" ("Packers T-Shirt Order").  (*Id.* ¶ 23). The total amount of the Packers T-Shirt Order was $14.95 plus shipping, which Plaintiff opted to pay using his HSN Card in 5 installments of $2.99 each using FlexPay. (*Id.* ¶ 24).  HSN successfully billed the first installment of $5.99 ($2.99 plus $3.00 shipping) to his HSN Card on the date of purchase and shipped the Packers T-Shirt to Plaintiff. (*Id.* ¶ 25). However, when HSN attempted to bill the fifth and final installment to the HSN Card, on March 28, 2017, payment was declined.   (*Id.* ¶ 26).  HSN thereafter called Plaintiff in an attempt to collect the unpaid amount for this purchase.  (*Id.* ¶ 27).

Similarly, on December 5, 2016, Plaintiff used his HSN Card to place Order No. 1379453370 for a "Samsung Galaxy SuperAMOLED 16GB 5" TracFone+1350 Minute/Text/Data BLACK" ("Samsung Galaxy Order").  (*Id.* ¶ 29).  The total amount of the Samsung Galaxy Order was $119.95, which Plaintiff opted to pay in 5 installments of $23.99 using FlexPay.  (*Id.* ¶ 30). HSN successfully billed the first installment of $23.99 to his HSN Card on the date of purchase and shipped the Samsung Galaxy to Plaintiff.  (*Id.* ¶ 31).  However, when HSN attempted to bill the fifth and final installment to the HSN Card, on April 5, 2017, payment was declined.   (*Id.* ¶

32).   HSN thereafter called Plaintiff in an attempt to collect the unpaid amount for this purchase. (*Id.* ¶ 33).

## V.   **Plaintiff Files for Bankruptcy**

On October 12, 2017, Plaintiff filed for bankruptcy in the Western District of Wisconsin, Case No. 17-13520.   *See In re Matter of Maurice B. Jewell, Jr.*, Bkr. No. 17-13520 (filed Oct. 12, 2017).   He was represented by the Lein Law Offices, one of the law firms representing him in this action.[2] (Bkr. Dkt. 1).   Plaintiff disclosed HSN as a creditor and, after receiving notice of the bankruptcy, HSN forgave the debt.[3]   (Carroll Decl. ¶ 35).   Plaintiff was discharged from bankruptcy on January 5, 2018.  (Bkr. Dkt. 22).

## LEGAL STANDARD

"An arbitration clause is a type of forum-selection clause."  *Grasty v. Colo. Tech. Univ.*, 599 F. App'x 596, 597 (7th Cir. 2015) (citations omitted).   "Motions to compel arbitration thus concern venue and are brought properly under Federal Rule of Civil Procedure 12(b)(3)."  *Id. Accord Faulkenberg v. CB Tax Franchise Sys., LP,* 637 F.3d 801, 80-08 (7th Cir. 2011) ("[A] motion to dismiss based on a contractual arbitration clause is appropriately conceptualized as an objection to venue, and hence properly raised under Rule 12(b)(3).") (citations omitted) (internal quotation marks omitted); *Olstad v. Chase Auto Fin. Corp.*, No. 17-236, 2018 US. Dist. LEXIS 9289, at * 4 (W.D. Wis. Jan. 22, 2018) (same).  When ruling on such a motion, "the district court is not obligated to limit its consideration to the pleadings" and may consider evidence submitted by the parties.  *Faulkenberg*, 637 F.3d at 509-10.

---

[2] Plaintiff is also represented by Greenwald Davidson Radbil, PLLC.
[3] Plaintiff disclosed the HSN Calls as assets of the bankruptcy estate.  (Bkr. Dkt. 1).  On behalf of Plaintiff, Mr. Lein successfully moved the bankruptcy Trustee to abandon those claims and to allow Plaintiff to pursue them outside of the bankruptcy.  (Bkr. Dkt. 11, 20).  In doing so, Plaintiff represented that the value of those claims was at most $15,000.  (Bkr. Dkt. 11).

## ARGUMENT

"To compel arbitration, a party need only show: (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Zurich Am. Ins. v. Watts*, 466 F.3d 577, 580 (7th Cir. 2006). *Accord Johnson v. Discover Bank,* No. 17-cv-412, 2018 U.S. Dist. LEXIS 23145, at *2 (W.D. Wis. Feb. 12, 2018) (same). The merits of the Plaintiff's claims are irrelevant and may not be considered. *See, e.g., AT&T Tech. v. Comm. Workers of Am.,* 475 U.S. 643, 649 (1986).

## I.   An Enforceable Arbitration Agreement is in Effect

"An agreement to arbitrate is valid, irrevocable, and enforceable, *as a matter of federal law*, *see Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983), 'save upon such grounds as exist at law or in equity for the revocation of *any* contract.'" *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) (emphasis in original) (quoting 9 U. S. C. § 2). *Accord Faulkenberg*, 637 F.3d at 808-09 (same). The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25. *Accord Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.,* 174 F.3d 907, 909 (7th Cir. 1999) (same); *Olstad,* 2018 US. Dist. LEXIS 9289, at *5 (same). Multiple Supreme Court "cases place it beyond dispute that the FAA was designed to promote arbitration" and "embod[ies] a national policy favoring arbitration . . . notwithstanding any state substantive or procedural policies to the contrary." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345-46 (2011) (citations omitted) (internal quotation marks omitted).

### A.   Plaintiff Agreed to the Arbitration Provision

"[T]he party resisting arbitration [] bears the burden of establishing that the arbitration clause at issue is invalid." *Battle v. Nissan Motor Acceptance Corp*., No 05-0669, 2006 U.S. Dist. LEXIS 37916, at *9 (E.D. Wis. March 9, 2006) (citations omitted). *Accord Wal-Mart Stores, Inc.*

8

*v. Helferich Patent Licensing, LLC*, 51 F. Supp. 3d 713, 717 (N.D. Ill. 2014) ("The party seeking to invalidate or oppose the arbitration agreement bears the burden of demonstrating that the arbitration agreement is unenforceable and that the claims are unsuitable for arbitration.").   Here, it is undisputed that Plaintiff effectively agreed to the terms and conditions of the HSN Card Agreement, including the Arbitration Provision, when he used the HSN Card and failed timely to opt-out of the Arbitration Provision.  (Dent Decl.  ¶¶ 10-12).  *See Zarandi v. Alliance Data Sys*., No. 10-8309, 2011 U.S. Dist. LEXIS 54602, at *4 (C.D. Cal. May 9, 2011) (Plaintiff's "failure to opt out of the Arbitration Provision constitutes consent to those terms").

**B.     Courts Have Routinely Enforced Identical or Substantially Similar Arbitration Provisions**

In addition to HSN, Comenity partners with more than 145 different retailers to issue private label credit cards and includes arbitration provisions and class action waivers in all of its credit card agreements.  (*See supra* n. 2).   Consequently, at least four federal courts have considered the validity and enforceability of arbitration provisions that are identical or substantially similar to the Arbitration Provision in this case and, having found that they were, granted motions to compel arbitration.  *See, e.g., Jackson v. Comenity Bank*, No. 16-1133, 2016 U.S Dist. LEXIS 144432, at *3 (D. Minn. Oct. 18, 2016) (granting motion to compel arbitration of TCPA and other claims pursuant to Comenity card agreement); *Wood v. Portfolio Recovery Assocs., LC*, No. 14-3044, 2015 U.S. Dist. LEXIS 188186, at *1-3 (M.D. Fla. Apr. 1, 2015) (granting motion to compel arbitration of putative class asserting violations of the Federal Debt Collection Practices Act (FDCPA) pursuant to Comenity card agreement); *Zarandi*, 2011 U.S. Dist. LEXIS 54602, at *4-5 (granting motion to compel arbitration of putative class action asserting violations of California consumer protection statutes and other claims pursuant to Comenity card agreement); *Clemins v. Alliance Data Sys. Corp.*, No. 11-36, Dkt. 29, 40 (E.D. Wis.

filed Jan. 13, 2011) (granting motion to compel arbitration of putative class asserting violations of Wisconsin Deceptive Trade Practices Act and other claims and subsequently denying reconsideration of the same pursuant to Comenity card agreement).

Various opposing counsel in other cases involving Comenity's arbitration provisions have acknowledged the enforceability of those provisions by agreeing to arbitrate TCPA claims before or after a motion to compel arbitration was filed. *See Barker v. Comenity Bank*, No. 18-1299, Dkt. 7, 8 (M.D. Pa. filed June 27, 2018) (granting uncontested motion to stay in favor of arbitration of TCPA claims); *Harris v. Comenity, LLC*, No. 18-1228, Dkt. 14 (N.D. Ga. filed Mar. 23, 2018) (joint stipulation to compel arbitration of TCPA claims); *Thomas v. Comenity LLC,* No. 17-2494, Dkt. 36 (M.D. Fla. filed Oct. 24, 2017) (granting unopposed motion to compel arbitration of TCPA and Florida Consumer Collections Practices Act (FCCA) claims); *Branca v. Comenity Bank,* No. 17-3527, Dkt. 4 (N.D. Ga. filed Sept. 14, 2017) (notice of voluntary dismissal of TCPA claims); *Hurley v. Comenity Bank*, No. 17-222, Dkt. 21 (N.D. Fla. filed Aug. 31, 2017) (joint stipulation to dismiss TCPA and FCCA claims); *Barnauskas v. Comenity Bank,* No. 17-1121, Dkt. 22 (M.D. Pa. filed June 26, 2017) (granting unopposed motion to compel arbitration of TCPA claims); *Alsaber v. Comenity Capital Bank,* No. 17-4499, Dkt. 9, 11 (N.D. Ill. filed June 14, 2017) (granting unopposed motion to compel arbitration of TCPA and Illinois Consumer Fraud and Deceptive Practices Act claims); *Greene v. Comenity LLC*, No. 17-1, Dkt. 18 (M.D. Fla. filed Jan. 3, 2017) (granting unopposed motion to compel arbitration of TCPA and FCCA claims); *Ingram v. Comenity Bank,* No. 16-2807, Dkt. 9, 10 (D. Nev. Dec. 6, 2016) (granting stipulation to arbitrate and dismiss TCPA and Nevada Deceptive Trade Practices Act claims); *Frazier v. Comenity LLC*, No. 16-25361, Dkt. 24 (S.D. Fla. filed Dec. 28, 2016) (joint motion to compel arbitration of TCPA and FCCA claims); *Draga v. Comenity Bank Corp.,* No. 16-2645, Dkt. 14 (S.D. Ind. filed Oct. 4,

2016) (voluntary motion to dismiss TCPA claims in favor of arbitration); and *Podolsky v. Comenity Capital Bank,* No. 16-4075, Dkt. 17 (D.N.J. filed July 7, 2016) (joint stipulation to arbitrate putative TCPA class action).

HSN respectfully submits that, like each of these cases, the pending case should be dismissed and the parties' dispute should be resolved through arbitration.

### C.    HSN Is Entitled to Enforce the Agreed Upon Arbitration Provision

#### 1.    Choice of Law

Whether a party may enforce an arbitration agreement is a matter of state contract law. *Faulkenberg,* 637 F.3d at 809 (citation omitted) ("Whether the parties have validly agreed to arbitrate is governed by state-law principles of contract formation."). *Accord Continental Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 730 (7th Cir. 2005) (same).  The HSN Card Agreement contains a "Governing Law Provision" that expressly states it is governed by "Utah and applicable federal law."  (Ex. 1-A HSN Card Agreement § E).

#### 2.    HSN Is a Party to the Arbitration Provision

The Arbitration Provision defines the "Parties Subject to Arbitration" as  "Comenity Bank, any parent, subsidiary or affiliate of the Bank."  (*Id.* § I.C.2).  The HSN Card Agreement does not define the term "affiliate."  Accordingly, the term should be given its plain, ordinary meaning— as understood by an "unsophisticated consumer"—according to basic rules of contract interpretation under Utah law.  *Fire Ins. Exch. v. Oltmanns*, 2018 UT 10, ¶ 30; *Draughon v. CUNA Mut. Ins. Soc'y*, 771 P.2d 1105, 1108 (Ut. Ct. App. 1989) (construing consumer insurance policy as "it would be understood by the average, reasonable purchaser of insurance").  Utah courts routinely refer to dictionaries in determining the plain, ordinary meaning of a word.  *See Oltmanns*, 2018 UT 10, ¶ 10 n.1 (using The Free Dictionary and Cambridge dictionaries).  *See also Kuhn v. Ret. Bd. Pub. Emps. Health Program*, 2015 UT App. 18, ¶¶ 8, 13 (using Merriam-Webster and

11

The Free Dictionary); *Dawson v. Dawson*, 841 P.2d 749, 751 (Ut. Ct. App. 1992) (using American Heritage Dictionary); *Payless Shoesource Inc. v. Travelers Cos., Inc.,* 585 F.3d 1366, 1373 (10th Cir. 2009) (using Oxford English Dictionary); *Kremers-Urban Co. v. Am. Emp'rs Ins. Co.*, 119 Wis. 2d 722, 741-42 (1984) (using Webster's Dictionary).

To "affiliate" means "to connect or associate oneself." *Affiliate Definition*, MERRIAM-WEBSTER.COM, http//www.merriam-webster.com/dictionary/affiliate (last visited May 2, 2019) Merriam-Webster. As a noun, it means "an affiliate person or organization." *Id. See also* OXFORD LIVING DICTIONARIES, https://en.oxforddictionaries.com/definition/affiliate (last visited May 2, 2019) ("a person or organization officially attached to a larger body"); COLLINS DICTIONARY, www.collinsdictionary.com/us/dictionary/english/affiliate (last accessed on May 2, 2019) ("an affiliate is an organization which is officially connected with another, larger organization or is a member of it"); THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, https://ahdictionary.com/word/search.html?q=affiliate (last accessed May 2, 2019) ("A person, organization, or establishment associated with another as a subordinate, subsidiary, or member.").

HSN is affiliated with Comenity by virtue of the fact that the two entities co-brand and offer to consumers the HSN Card. As discussed above, the HSN Card is a private label card for HSN customers to use exclusively in connection with purchases from HSN.

The conclusion that HSN is an affiliate of Comenity is further supported by a recent decision of another court in the Seventh Circuit. In *Thompson v. Sutherland Global Servs*., the plaintiff registered for AT&T U-Verse internet service. No. 17-3607, 2019 U.S. Dist. LEXIS 57539, at *1-3 (N.D. Ill. Apr. 3, 2019). Thompson alleged that Sutherland Global Services violated the TCPA when it called him in connection with an AT&T customer retention program. *Id.* Sutherland moved to compel arbitration, relying on an arbitration agreement entered into between

AT&T and Thompson. *Id.* at *7. The Court ruled that Sutherland was a party to the arbitration agreement because that agreement applied to AT&T and its "affiliates." *Id.* at *12. In doing so the court concluded that Sutherland was acting as an AT&T affiliate when making the calls because Thompson was an AT&T customer and Sutherland was calling Thompson about an AT&T customer program. *Id.* The Court also found that Sutherland was a third-party beneficiary of the arbitration agreement between Thompson and AT&T because the arbitration agreement was written to benefit AT&T's "affiliates" by allowing them to resolve disputes with Plaintiff in arbitration. *Id.* at *15-16.

The present case is analogous to the situation presented in *Thompson.* And here, the connectivity is even stronger given the undisputed fact that the calls at issue relate directly to purchases Jewell made from HSN.

Lastly, it is axiomatic that "[t]he goal of contract interpretation is to give effect to the contracting parties' intentions as the time the contract was made." *Smargon v. Grand Lodge Partners, LLC,* 2012 UT App. 305, ¶ 32. Here, it is clear from the Complaint that Plaintiff understood HSN was a party to the HSN Credit Agreement because he alleges that he purchased items from HSN "pursuant to an open-end credit-plan with Defendant," and the only Defendant in this case is HSN. (*See* Compl. ¶ 15). For each of these reasons, HSN is an affiliate of Comenity and is entitled to enforce the Arbitration Provision contained in the HSN Credit Agreement.

### 3. HSN Can Enforce the Arbitration Provision Under Third-Party Beneficiary and Estoppel Principles.

Alternatively, HSN is entitled to enforce the Arbitration Provision based on its status as a third-party beneficiary of the HSN Card Agreement, or under basic estoppel principles. "[T]raditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference,

third-party beneficiary theories, waiver and estoppel." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (citations omitted) (internal quotation marks omitted).  Whether these theories or doctrines apply is a matter of state law.  *Id.* at 630-31.

Under Utah law, a nonsignatory may enforce an arbitration clause against a signatory based on its status as a third-party beneficiary or under estoppel principles where "the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Solid Q Holdings LLC v. Arenal Engery Co.*, 2015 UT App. 272, ¶ 11 (citation omitted)); *I-Link v. Red Cube Int'l A.G.,* No. 01-49, 2001 U.S Dist. LEXIS 1609, at *12-13 (D. Ut. Feb. 9, 2001) (same).[4]  "This rule 'makes sense because the parties resisting arbitration had expressly agreed to arbitrate claims of the very type that they asserted against the nonsignatory.'" *Solid Q*, 2015 UT App. 272, ¶ 11.  Put differently, "[t]his doctrine recognizes that it would be unfair to allow a plaintiff to 'rely on a contract when it works to its advantage, and repudiate it when it works to [its] disadvantage.'" *Penn. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n,* 713 F. Supp. 2d 734, 745 (N.D. Ill. 2010) (quoting *Hughes Masonry Co. v. Greater Clark County Sch. Bldg. Corp.*, 659 F.2d 836, 838 (7th Cir. 1981)).

---

[4] In applying third-party beneficiary and estoppel principles in the context of motions to compel arbitration, Courts in Utah have taken care to distinguish between cases like this one—where a nonsignatory (HSN) is seeking to enforce an arbitration clause against a signatory (Plaintiff)—and the opposite situation, where a signatory is attempting to enforce an arbitration clause against a nonsignatory. *See I-Link*, 2001 U.S Dist. LEXIS 1609, at *12-13  (granting nonsignatory's motion to compel arbitration against signatory); *Ellsworth v. Am. Arbitration Ass'n*, 2006 UT 77, ¶ 20 n.12 (refusing to permit a signatory to enforce an arbitration clause against a nonsignatory but recognizing that "[a]nother variety of nonsignatory estoppel is that enforced by a nonsignatory when the signatory plaintiff sues a nonsignatory defendant on the contract but seeks to avoid the contract-mandated arbitration by relying on the fact that the defendant is a nonsignatory."); *Solid Q*, 2015 UT App. 272, ¶¶ 11-12 (refusing to allow signatory to enforce arbitration clause against nonsignatory but recognizing that estoppel is appropriate where a nonsignatory is the party seeking enforcement); *Inception Mining, Inc. v. Danzig, Ltd.*, 312 F. Supp. 3d 1271, 1281-84 (D. Ut. 2018) (same).  These decisions make clear that the case is far stronger for compelling arbitration where, as here, the nonsignatory is seeking to enforce the arbitration agreement against a signatory.  *Id.*

14

A host of federal courts have applied third-party beneficiary, equitable estoppel and other contract theories to allow nonsignatories to enforce arbitration provisions against signatories. *See, e.g., JLM Indus. v. Stolt-Nielson SA*, 387 F.3d 163, 177-178 (2d Cir. 2004) (defendants-nonsignatories-owners allowed to enforce arbitration clause against signatories because plaintiff's "entry into the charters," which contained the arbitration clause the owners sought to enforce, "gives rise to the claimed injury"); *Spear, Leeds & Kellog v. Central Life Assurance Co.*, 85 F.3d 21, 26-27 (2d Cir. 1996) (defendant-nonsignatory insurance companies allowed to enforce arbitration rules of NYSE members against plaintiff-member-broker under third-party beneficiary theory because dispute was related to broker's exchange activities); *Int'l Paper Co. v. Schwabdiessen Maschinsen & Analgen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000) (defendant-nonsignatory may enforce arbitration clause against plaintiff-signatory to purchase contract because that contract "provides part of the factual foundation for every claim asserted by" plaintiff); *Grigson v. Creative Artists Agency, L.L.C.,* 210 F.3d 524, 530-31 (5th Cir. 2000) (defendants-nonsignatories to a distribution agreement allowed to enforce arbitration clause in that agreement against plaintiff-signatory pursuant to equitable estoppel principles); *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003) (vacating order denying motion to compel arbitration and remanding for consideration of whether various theories, including third-party beneficiary theory, applied); *Tickanen v. Harris & Harris, Ltd.*, 461 F. Supp. 2d 863, 869-70 (E.D. Wis. 2006) (defendant-nonsignatory was allowed to compel arbitration of plaintiff-signatory's FDCPA claim against it under equitable estoppel theory because the claim acknowledged "the existence of a debt" and therefore could not "ignore the concomitant arbitration agreement"); *Hughes Masonry*, 659 F.2d at 838 (defendant-nonsignatory to construction agreement allowed to compel arbitration with signatory under equitable estoppel principles); *Penn. Chiropractic,* 713 F.

Supp. 2d at 745 (defendant-nonsignatory to insurance provider agreement allowed to compel arbitration under equitable estoppel principles);  *Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.*, 485 F.3d 450, 455-56 (9th Cir. 2007) (defendants-nonsignatories allowed to enforce forum selection clause against plaintiff-signatory "because any transactions between those [non-signatories] and [plaintiff] took place as part of the larger contractual relationship between [plaintiff] and [signatory]" and the alleged conduct of plaintiff "is tied to" the contract containing the forum selection clause); *Gibson v. Wal-Mart Stores, Inc.*, 181 F.3d 1163, 1170 n.3 (10th Cir. 1999) (defendant-non-signatory and co-employee of plaintiff allowed to enforce arbitration provision in agreement between Walmart and plaintiff under third-party beneficiary theory); *I-Link,* 2001 U.S Dist. LEXIS 1609, at *12-13 (defendant-nonsignatory permitted to compel arbitration against plaintiff-signatory to cooperation agreement under agency theory principles); *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947-48 (11th Cir. 1999) (defendant-nonsignatory to retail installment contract allowed to enforce arbitration provision against plaintiff-signatory under equitable estoppel principles); *Gunson v. BMO Harris Bank, N.A.*, 43 F. Supp. 3d 1396, 1402 (S.D. Fla. 2014) (defendant-nonsignatory to loan agreement allowed to enforce arbitration provision against plaintiff-signatory under equitable estoppel principles).

Here, at a minimum, HSN is a third party beneficiary of the HSN Card Agreement because the purpose of the HSN Card is to facilitate consumers' purchases from HSN.  Further, the telephone calls at issue in this case were placed in an attempt to collect payment for charges made to the HSN Card.  (*See supra* 6-7).  As a result, Plaintiff's claims are "intertwined" with the HSN Card Agreement.

Plaintiff should be equitably estopped from arguing that the terms of the HSN Card Agreement, notably the Arbitration Provision, should be ignored.  *Solid Q*, 2015 UT App. 272,

¶ 11.  Specifically, Plaintiff used the HSN Card to induce HSN to sell him merchandise pursuant to an installment plan, allowing him to receive and benefit from the merchandise without fully paying for it up-front.  Plaintiff did so knowing that HSN would bill subsequent payments to his HSN Card.  It would be inequitable to permit Plaintiff to avail himself of the benefits of the HSN Card while at the same time refusing to be bound by the terms and conditions related to use of the HSN Card, specifically the Arbitration Provision. *See Hughes Masonry*, 659 F.2d at 839 ("In short, (plaintiff) cannot have it both ways. (It) cannot rely on the contract when it works to its advantage, and repudiate it when it works to (its) disadvantage."); *Grigson*, 210 F.3d at 528 (application of equitable estoppel depends on the facts of the case and "[t]he linchpin for equitable estoppel is equity -- fairness.").

## II.      Plaintiff's Claims Fall Within the Scope of the Arbitration Provision

"The Court of Appeals for the Seventh Circuit has held that the language 'arising out of or relating to' is 'extremely broad,' 'capable of an expansive reach' and 'necessarily create[s] a presumption of arbitrability.'" *Johnson*, 2018 U.S. Dist. LEXIS 23145, at *4 (quoting *Kiefer Specialty Flooring*, 174 F.3d at 909-10).  Here, the Arbitration Provision covers "any claim, dispute or controversy between you and us that *in any way arises from or relates to*," among other things, the HSN Card Agreement or the HSN Card.  (Ex. 1-A, HSN Card Agreement § I.C.3 (emphasis added)).  It further provides that the word "claim," as used in the Arbitration Provision, "has the broadest possible meaning" and "includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity (including any claim for injunctive  or declaratory  relief)." (*Id.*).

Plaintiff's TCPA and WCA claims "arise from," or at the very least "relate to" the HSN Card and HSN Card Agreement.  As discussed at length above, the calls at issues were placed solely for the purpose of trying to collect on delinquent charges posted to the HSN Card.  Thus,

17

Plaintiff's claims fall squarely within the scope of this Arbitration Provision and are presumptively arbitrable.  *See Battle*, 2006 U.S. Dist. LEXIS 37916, at *2, 13-15 (compelling arbitration of claims under the WCA and other federal and statute statutes).

The fact that Plaintiff purports to bring a class claim is of no moment because, pursuant to the Arbitration Provision, he agreed to waive his right to pursue class action claims:  "NEITHER YOU NOR WE MAY PARTICIPATE IN A CLASS ACTION IN COURT OR IN CLASS-WIDE ARBITRATION EITHER AS A PLAINTIFF, DEFENDANT OR CLASS MEMBER."   (Ex. 1-A, HSN Card Agreement § I.C.7).   The Supreme Court has ruled that class action waivers contained in arbitration clauses are enforceable.  *See Concepcion,* 563 U.S. at 352 (FAA preempts state laws to the extent they find class action waivers in arbitration agreements are unconscionable); *American Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) ("[C]ourts must rigorously enforce arbitration agreements according to their terms, including terms that specify with whom the parties chose to conduct their disputes, and the rules under which the arbitration will be conducted.  That holds true for claims that allege a violation of a federal statute, unless the FAA's mandate has been overridden by a contrary congressional command.") (internal quotations and citations omitted); *Villalobos v. EZ Corp.*, No. 12-852, 2013 U.S. Dist. LEXIS 97998, at *17-18 (W.D. Wis. Jul. 12, 2013) (declining to consider argument that class action waiver in arbitration could not be enforced in light of *Concepcion*).

Lest there be any doubt that the Arbitration Provision covers the claims at issue here, other courts have found that TCPA claims and other debt collection and consumer protection statutory claims—including similar claims brought by Plaintiff's counsel in other matters—are covered under substantially similar arbitration provisions in other Comenity credit card agreements.  *See Jackson,* 2016 U.S Dist. LEXIS 144432, at *3; *Wood,* 2015 U.S. Dist. LEXIS 188186, at * 1-3;

18

*Zarandi,* 2011 U.S. Dist. LEXIS 54602 at *4-5; *Clemins, No. 11-36, Dkt. 29, 40, discussed supra*

10-11.  Notably, counsel for plaintiffs in *Wood* were the same lawyers representing Jewell in this

case, Greenwald Davison Radbil, PLLC.  2015 U.S. Dist. LEXIS 188186.

### III.  Plaintiff Refuses to Arbitrate.

On May 7, 2019, undersigned counsel contacted Plaintiff's counsel and requested that the

parties arbitrate this dispute pursuant to the terms of the HSN Card Agreement.  Counsel for

Plaintiff would not agree to arbitrate at this time.

**<u>CONCLUSION</u>**

WHEREFORE, and for the foregoing reasons, HSN respectfully requests that this Court

enter an order dismissing this case for improper venue and compelling arbitration.

**Dated: May 10, 2019**                              **HSN, INC.**


                                                    By:   *s// Daniel M. Blouin*
                                                    One of Its Attorneys

                                                    Daniel M. Blouin
                                                    dblouin@seyfarth.com
                                                    Jordan P. Vick
                                                    jvick@seyfarth.com
                                                    SEYFARTH SHAW LLP
                                                    233 South Wacker Drive
                                                    Suite 8000
                                                    Chicago, Illinois  60606-6448
                                                    Telephone: (312) 460-5000
                                                    Facsimile: (312) 460-7000

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 10, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.


<u>*s// Daniel M. Blouin*</u>
Daniel M. Blouin