## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

MAURICE JEWELL, JR.,
on behalf of himself others similarly situated,

                           Plaintiff,                      Case No.: 3:19-cv-00247-jdp

HSN, INC.,

                           Defendant,

## PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

### Introduction

Maurice Jewell, Jr. ("Plaintiff") alleges, on behalf of himself and a class of similarly situated persons, that HSN, Inc. ("Defendant") violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and the Wisconsin Consumer Act, Wis. Stat. § 427.101 *et seq*. ("WCA"), by using an automatic telephone dialing system ("ATDS"), and an artificial and prerecorded voice, to place calls to cellular telephone numbers without consent. Defendant denies Plaintiff's material allegations, or that it violated the TCPA or WCA when contacting Plaintiff and the class members.

Nonetheless, after eight months of litigation, which included a contested motion to compel arbitration and written discovery, the parties agreed to resolve this matter for an all-cash common fund totaling $700,000 for the benefit of 750 consumers nationwide. From the common fund, class members who do not exclude themselves will receive a *pro rata* distribution, after deducting the costs of notice and settlement administration, any incentive award to Plaintiff as awarded by the Court, and any attorney's fees, costs and expenses to his counsel as awarded by the Court. Notably, no amount of the common fund will revert to Defendant.

Plaintiff now seeks certification of the settlement class and preliminary approval of the settlement. Plaintiff and his counsel strongly believe that the settlement—which will result in substantial cash payments to class members without the need for class members to submit onerous claim forms—is fair, reasonable, and adequate, and in the best interests of class members. As more fully set forth below, Plaintiff respectfully requests that this Court enter the accompanying order granting preliminary approval of the settlement. Defendant does not oppose this relief.

**Legal and Factual Background**

The TCPA makes it unlawful for "any person . . . to make any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to . . . cellular telephone service. . . ." 47 U.S.C. § 227(b)(1)(A)(iii).[1] The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

Beginning in approximately April 2017, and continuing through at least July 26, 2017, Defendant, using its SmartCall system, repeatedly placed calls to Plaintiff's cellular telephone number, in many instances delivering prerecorded messages. Plaintiff alleges that Defendant did so despite Defendant receiving a letter on or about April 18, 2017 directing it to stop calling Plaintiff and to cease communications with him.

Defendant's records indicate that it placed calls to Plaintiff's cellular telephone number after it changed the "Never Call" flag in its system regarding Plaintiff's telephone number from "No" to "Yes" on April 19, 2017. Moreover, there are 749 other persons in the United States who

---

[1]      "'[P]rior express consent' under the TCPA is an affirmative defense on which the defendant bears the burden of proof[.]" *Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1149 (N.D. Ill. 2014).

received at least one call from Defendant between April 1, 2015 and December 12, 2019 after Defendant applied a "Never Call" flag in its system to those persons' accounts. Defendant contends that any calls placed after the "Never Call" flag was applied were inadvertent.

### Summary of the Settlement

Through their settlement, the parties agreed to resolve this matter on behalf of the following class:

> All persons and entities throughout the United States (1) to whom HSN, Inc. placed, or caused to be placed, one or more calls, (2) directed to a number assigned to a cellular telephone service, (3) by using an automatic telephone dialing system or an artificial or prerecorded voice, (4) from April 1, 2015 through December 12, 2019, (5) after HSN, Inc.'s records show that a "Never Call" Flag was added to that person's or entity's account.

To compensate class members, Defendant will create a non-reversionary common fund in the amount of $700,000. Each of the 750 class members who does not exclude himself or herself will be entitled to a *pro rata* share of the non-reversionary common fund after deducting: costs and expenses of providing notice of, and administrating, the settlement; an award of attorneys' fees, subject to this Court's approval; reimbursement of litigation costs and expenses, subject to this Court's approval; and Plaintiff's incentive award, subject to this Court's approval. That is, class members need not take any action to receive a settlement payment. It is expected that each participating class member will receive at least $550—a result that compares extremely favorably to other TCPA class action settlements.

A third-party class administrator will mail notice of the parties' settlement directly to class members. The class administrator will also establish a website that provides information about the settlement. To that end, the parties have selected First Class, Inc. ("First Class") to act as the class administrator. First Class is an experienced class administrator that has previously received approval in this Circuit to administer class action settlements. *See, e.g.*, *Veness v. Heywood, Cari*

3

& *Anderson*, S.C., No. 17-cv-338-bbc, 2017 WL 6759382, at *5 (W.D. Wis. Dec. 29, 2017) (Crabb, J.) (appointing First Class); *Young v. City of Chicago*, No. 10 C 989, 2013 WL 9947388, at *1 (N.D. Ill. Aug. 21, 2013) (same).

Any class member who wishes to exclude himself or herself from the settlement can submit a request for exclusion. Likewise, any class member who wishes to object to the settlement can submit an objection.

Upon this Court's entry of a final judgment, Plaintiff and each participating class member will release and forever discharge all claims under the TCPA, and analogous state laws, arising from calls that Defendant placed to class members from April 1, 2015 through December 12, 2019 by using an ATDS or an artificial or prerecorded voice.

## Argument

### I.     This Court should certify the class for settlement purposes.

Under Rule 23 of the Federal Rules of Civil Procedure, the party seeking class certification must satisfy the four requirements of Rule 23(a)—referred to as numerosity, commonality, typicality, and adequacy of representation—and, in a matter like this one, the requirements of Rule 23(b)(3). Here, Plaintiff satisfies each of these requirements.

### A.   Plaintiff satisfies the requirements of Rule 23(a).

#### 1.   The class is so numerous that joinder of all members is impracticable.

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Where the class numbers at least 40, joinder is generally considered impracticable." *Simpson v. Safeguard Props., LLC*, No. 13 CV 2453, 2014 WL 4652336, at *2 (N.D. Ill. Sept. 17, 2014); *see also Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969) ("Even if the class were limited to 40

stockholders, as proposed by the court below, that is a sufficiently large group to satisfy Rule 23(a) where the individual members of the class are widely scattered and their holdings are generally too small to warrant undertaking individual actions.").

Here, Defendant has identified 750 members of the class dispersed throughout the country. Accordingly, the class is so numerous that joinder is impracticable. *See, e.g.*, *Veness*, 2017 WL 6759382, at *2 (finding numerosity satisfied with 49 class members); *Hoffmaster v. Coating Place, Inc*, No. 16-cv-258-wmc, 2017 WL 945107, at *2 (W.D. Wis. Mar 10, 2017) (Conley, J.) (finding numerosity satisfied with 78 class members); *Shepherd v. ASI, Ltd.*, 295 F.R.D. 289, 296-97 (S.D. Ind. 2013) (finding numerosity satisfied where the class was estimated to be 273 persons).

### 2.   Common questions exist as to each member of the class.

Rule 23(a)(2) requires the existence of common questions of law or fact. A common question is one such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 673 (7th Cir. 2015).

"The test for commonality is not demanding." *Lightbourn v. Cnty. of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997), *cert. denied*, 522 U.S. 1052 (1998). To satisfy the commonality element, it is enough for a plaintiff to present just one common claim. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). A class action is appropriate in situations where the "issues involved are common to the class as a whole" and when they "turn on questions of law applicable in the same manner to each member of the class." *Califano v. Yamasaki*, 99 S. Ct. 2545, 2257 (1979). Moreover, as Judge Easterbrook wrote: "Class certification is normal in litigation under [the TCPA], because the main questions . . . are common to all recipients." *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013).

This case presents a host of common questions. For example, whether Defendant placed the calls at issue by using an ATDS is a question that is common to all class members. *See Lavigne v. First Cmty. Bancshares, Inc.*, 2018 WL 2694457, at *4 (D.N.M. June 5, 2018) ("Plaintiff identifies a number of common questions of law or fact: • whether the Aspect Unified IP used to call all class member is an automatic telephone dialing system"); *Cabrera v. Gov't Emps. Ins. Co.*, No. 12-61390-CIV, 2014 WL 11894430, at *3 (S.D. Fla. Sept. 29, 2014) (finding that "common questions . . . apt to drive the resolution of the case, includ[e] (1) whether [the defendant] placed the calls at issue; [and] (2) whether it did so using an automated dialing system or prerecorded or artificial voice").

Furthermore, that each class member suffered the same injury and is entitled to the same statutorily mandated relief gives rise to another common question. *See Lavigne*, 2018 WL 2694457, at *4 (noting as a common question "whether the class suffered the same injury, receipt of call in violation of the TCPA."); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 224 (N.D. Ill. 2016) ("Each class member suffered roughly the same alleged injury: receipt of at least one phone call or text message from Chase to her cell phone."); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 251 (N.D. Ill. 2014) ("Here there is a common injury, resulting from receipt of the allegedly offending calls . . . . The Court likewise determines that there are questions of law or fact common to each class member.").

As a result, Plaintiff satisfies the commonality requirement.

### 3.  Plaintiff's claims are typical of the claims of each member of the class.

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement "directs the district court to focus on whether the named representatives' claims have the same essential characteristics

as the claims of the class at large." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009). "A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542 (6th Cir. 2012).

Here, Plaintiff is unquestionably a member of the class, as he received artificial or prerecorded voice calls from Defendant's SmartCall system on his cellular telephone between April 1, 2015 and December 12, 2019, despite Defendant's records showing that a "Never Call" Flag was added to his account before the calls were made. As such, Plaintiff was harmed in the same way as each member of the class. His claims are therefore typical of the claims of the members of the proposed class. *See Birchmeier*, 302 F.R.D. at 252 ("For this reason, and because the named plaintiffs received the same type of call as the other class members, their claims are typical of those of the class."); *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 696 (S.D. Fla. 2015) ("The Court finds that the proposed class representative satisfies the typicality requirements because Plaintiff, like each of the class members, was purportedly sent the same fax and each class member's claim is based on the same legal theory and same set of facts as Plaintiff's claim."); *see also Lucas v. GC Servs. L.P.*, 226 F.R.D. 337, 341 (N.D. Ind. 2005) ("All of the class members' claims arise from the same practice of GC Services which gave rise to Plaintiffs' claims, that is each time Defendants sent a collection letter similar to that received by Plaintiffs, they allegedly violated the Fair Debt Collection Practices Act. Thus, Plaintiffs' claims are typical of the class because they arise from the same course of conduct and are based on the same general legal theory.").

**4. Plaintiff, and his counsel, have, and will, fairly and adequately protect the interests of each member of the class.**

Next, the Court must determine if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To adequately represent a class, a named plaintiff must show that he can act in a fiduciary role representing the interests of the class, and has no interests antagonistic to the interests of the class. *See Chapman v. Worldwide Asset Mgmt., L.L.C.*, No. 04 C 7625, 2005 WL 2171168, at *4 (N.D. Ill. Aug. 30, 2005) ("Three elements must be satisfied: (1) the class representative cannot have antagonistic or conflicting claims with other members of the class; (2) the class representative must have a sufficient interest in the outcome to ensure vigorous advocacy; (3) counsel for the class representative must be competent, experienced, qualified and generally able to conduct the proposed litigation vigorously.").

Here, Plaintiff has diligently pursued this case since its inception with the goal of obtaining relief for members of the class. *See Selburg v. Virtuoso Sourcing Grp., LLC*, No. 1:11–cv–1458–RLY–MJD, 2012 WL 4514152 at *9 (S.D. Ind. Sept. 29, 2012) ("Here, the court finds Plaintiff to be an adequate representative without any conflicts or antagonistic claims of the proposed class members. All members of the class received the allegedly deficient letter issued by Virtuoso and are challenging its validity under the FDCPA. The Plaintiff has a sufficient stake in the outcome and will be a zealous advocate of the class. In addition, counsel for named Plaintiff is experienced in class actions and other complex litigation and thus satisfies that requirement. Accordingly, the adequacy of representation requirement under Rule 23(a)(4) has been met."). Moreover, he has no interests that conflict with or are antagonistic to the other members of the class.

In addition, Plaintiff retained the services of counsel who are well-versed in class action litigation. Courts across the country have appointed Greenwald Davidson Radbil PLLC ("GDR") as class counsel in numerous consumer protection class actions in the past several years, including

8

those brought under the TCPA. *See* Declaration of James L. Davidson ("Davidson Dec."), filed contemporaneously herewith, at ¶ 8. Thus, in addition to satisfying the adequacy prong of Rule 23(a)(4), GDR, and its co-counsel Lein Law Offices, also satisfy the considerations of Rule 23(g). Accordingly, this Court should appoint GDR and Lein Law Offices to represent the class. *See Veness*, 2017 WL 6759382, at *2 (appointing GDR and Lein Law Offices as class counsel); *Johnson v. Navient Solutions, Inc.*, 315 F.R.D. 501, 503 (S.D. Ind. 2016) (appointing GDR as class counsel).

### B. Plaintiff satisfies the requirements of Rule 23(b)(3).

#### 1. Questions common to each member of the class predominate over any questions affecting only individual members.

The predominance factor "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Where common questions "predominate," a class action can achieve economies of time, effort, and expense as compared to separate lawsuits, permit adjudication of disputes that cannot be economically litigated individually, and avoid inconsistent outcomes, because the same issue can be adjudicated the same way for the entire class. Fed. R. Civ. P. 23(b)(3), advisory committee's note (1966).

To state a claim under the TCPA, a plaintiff must allege that he was called with an ATDS or an artificial or prerecorded voice, without consent, on his cellular telephone number. *Mauer v. Am. Intercontinental Univ., Inc.*, No. 16 C 1473, 2016 WL 4651395, at *2 (N.D. Ill. Sept. 7, 2016). As such, "whether [Defendant] used an automated telephonic dialing system to [place the subject calls] and caused injuries to the class members is an issue that predominates over those that may be considered individualized." *Mohamed v. Am. Motor Co., LLC*, 320 F.R.D. 301, 316 (S.D. Fla. 2017); *see also Gehrich*, 316 F.R.D. at 226 (noting that "[t]he common questions [including

whether the defendant placed prerecorded or automated calls to cellular telephone numbers] are the main questions in this case, they can be resolved on a class-wide basis without any individual variation, and they predominate over any individual issues").

Moreover, as the class is limited to persons and entities who received an ATDS or an artificial or prerecorded voice call after Defendant's records show that it entered a "Never Call" flag in its system, there are no individualized issues that will predominate over questions common to the members of the class. *See, e.g.*, *Lavigne*, 2018 WL 2694457, at *7 ("Moreover, the Court concludes that common issues predominate, and Plaintiff's proposed methodology eliminates individualized inquiries or mini-trials. The class members appear to be in the same factual situation, and the class is likely to fail or succeed on the merits (such as whether class members expressly revoked consent) on the same common evidence, i.e., Defendants' business records."). As such, predominance is satisfied.

### 2. A class action is superior to other available methods for the fair and efficient adjudication of this matter.

Rule 23(b)(3) also requires that a district court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In determining whether a class action is superior, a court may consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Id.*

In general, litigating TCPA claims as part of a class action is superior to litigating them in successive individual lawsuits. *See Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 247 (D. Ariz.

2019) (noting in certifying a TCPA class: "The Court is persuaded that putative class members who would ultimately become part of the class would have little incentive to prosecute their claims on their own. Should individual putative class members choose to file claims on their own, given the potential class size and the relatively small amount of statutory damages for each case, individual litigation would not promote efficiency or reduce litigation costs. . . . Therefore, the Court finds that a class action is a superior method to adjudicate this matter."); *Green v. Serv. Master On Location Servs. Corp.*, No. 07 C 4705, 2009 WL 1810769, at *3 (N.D. Ill. June 22, 2009) ("[R]esolution of the issues [under the TCPA] on a classwide basis, rather than in thousands of individual lawsuits (which in fact may never be brought because of their relatively small individual value), would be an efficient use of both judicial and party resources.").

As well, here, no one class member has an interest in controlling the prosecution of this action. Simply, the claims of all members of the class are identical, they arise from the same standardized conduct, and they result in uniform damages calculated on a per-violation basis. *See James v. JPMorgan Chase Bank, N.A.*, No. 15–2424, 2016 WL 6908118, at *1 (M.D. Fla. Nov. 22, 2016) ("This class action, which resolves the controversy more fairly and efficiently than a series of individual actions, satisfies Rule 23(b)(3)'s superiority requirement. Because the TCPA permits a maximum award of $500 absent a willful violation, each class member lacks a strong financial interest in controlling the prosecution of his action."); *Lavigne*, 2018 WL 2694457, at *8 ("Here, Plaintiff has met the superiority requirement. It is unlikely that putative class members will file a case under TCPA for $500-1500, and will have little interesting in controlling the prosecution of the TCPA claims. Moreover, the complex nature of this TCPA action lends itself to the efficiencies of class certification. It would inefficient to reinvent wheel on approximately 30,000 separate cases. Moreover, the courts would be substantially burdened by 30,000 separate

suits—or even a fraction of that.").

Furthermore, absent a class action, hundreds of claims like Plaintiff's—all of which stem from Defendant's identical conduct in allegedly calling class members' cellular telephones after being asked to stop calling—will likely go un-redressed. *See Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 446 (N.D. Ohio 2012) ("Under the TCPA, each individual plaintiff is unlikely to recover more than a small amount (the greater of actual monetary loss or $500). Individuals are therefore unlikely to bring suit against [the defendant], which makes a class action the superior mechanism for adjudicating this dispute.").

A class action is therefore the superior method to adjudicate all aspects of this controversy.

### 3. Because Plaintiff defines the class by reference to objective criteria, it is ascertainable.

Because "[t]he criteria referenced in the class definition are objective and are not necessarily determinative of the ultimate issue of liability," the class is properly defined and ascertainable. *Young*, 693 F.3d at 539; *see also Mullins*, 795 F.3d at 659-60 (explaining that a class is ascertainable where its definition is (1) not amorphous or imprecise, but clearly defined, (2) not limited by subjective criteria, but rather objective criteria, and (3) not a fail-safe class, or one defined in terms of success on the merits). Indeed, the proposed class definition is not vague. Instead, it identifies a group of individuals allegedly harmed in a particular way during a specific period of time.

Moreover, Defendant can identify each person in the class by name and address. Thus, not only is the class definition proper on its face, the members of the class are also readily identifiable. *See, e.g.*, *Rhodes v. Enhanced Recovery Co., LLC*, 328 F.R.D. 225, 228 (S.D. Ind. Oct. 19, 2018) ("Defendant produced a spreadsheet of 509 individuals who had been sent the same letter identifying Kohls as the 'original creditor' and Chase Bank as the 'creditor.' Accordingly, we are

persuaded that the class defined by Ms. Rhodes is ascertainable.").

## II. This Court should preliminarily approve the settlement as fair, reasonable, and adequate under Rule 23(e).

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75

F.3d 1191, 1196 (7th Cir. 1996); *see also Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d

305, 313 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas,* 134 F.3d 873 (7th Cir.

1998) ("Settlement of the complex disputes often involved in class actions minimizes the litigation

expenses of both parties and also reduces the strain such litigation imposes upon already scarce

judicial resources."). While settlements are favored, Rule 23(e) still requires that the Court make

a preliminary determination of fairness:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

MANUAL FOR COMPLEX LITIGATION §21.632 (4th ed. 2004); *see also* 4 ALBA CONTE &

HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 11.25 (4th ed. 2002). After the

preliminary fairness evaluation has concluded, the class has been certified for settlement purposes,

and notice has been issued, the Court holds a final fairness hearing to determine whether the

proposed settlement is truly fair, reasonable, and adequate. *See* MANUAL FOR COMPLEX

LITIGATION § 21.633-34; 4 NEWBERG, *supra* at § 11.25.

Preliminary approval requires only that the Court evaluate whether the proposed settlement

"is within the range of possible approval." *Armstrong*, 616 F.2d at 314. Nevertheless, and with the

understanding that a full fairness determination is not necessary at this preliminary approval stage,

the Seventh Circuit identified a number of factors used to assess whether a settlement proposal is fundamentally fair, reasonable, and adequate: (1) the strength of the plaintiff's case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

As well, Rule 23(e) requires a court to consider several additional factors, including that the class representative and class counsel have adequately represented the class, and that the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e).

Each relevant factor supports the conclusion that the settlement here is fundamentally fair, adequate, and reasonable.

### A. The strengths of Plaintiff's case and the risks inherent in continued litigation and securing class certification favor preliminary approval.

"[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985), *on reh'g sub nom. Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682 (7th Cir. 1986). Here, significant risks and costs accompany continued litigation.

First, absent settlement, Defendant intended to move to strike Plaintiff's class allegations, arguing—given the Supreme Court's opinion in *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773 (2017)—that this Court lacked personal jurisdiction over the claims of those prospective class members who reside outside of Wisconsin. While most courts nationwide have found that *Bristol-Myers* is inapplicable to Rule 23 class actions such as this case, some courts in this Circuit have applied *Bristol-Myers* to strike class allegations in Rule 23 cases. *See, e.g.*, *Mussat v. IQVIA Inc.*, No. 17 C 8841, 2018 WL 5311903, at *5 (N.D. Ill. Oct. 26, 2018) (applying

14

"core reasoning" from *Bristol-Myers* to strike nationwide class allegations from TCPA putative class action because "whether it be an individual, mass, or class action, the defendant's rights should remain constant.").

Moreover, some courts have refused to certify similar TCPA class actions because the determination of whether someone revoked consent to be called can be difficult to establish on a uniform basis. *See, e.g.*, *Tillman v. Ally Fin. Inc.*, No. 2:16-CV-313-FTM-99CM, 2017 WL 7194275, at *7 (M.D. Fla. Sept. 29, 2017) ("Moreover, plaintiff fails to demonstrate how consent (or lack thereof) can be established through class-wide proof, as Ally has offered evidence that it is common for customers to revoke consent and then reinstate it."); *Lanteri v. Credit Protection Ass'n L.P.*, No. 13-cv-01501, 2017 WL 3621299, at *4 (S.D. Ind. Aug. 22, 2017) ("The Court, then, must determine whether each of the text messages listed in the TCPA Stop Texting Class definition and the message sent by the Plaintiff constitute revocations of consent. For this reason, revocation of consent will not be proved or disproved on evidence and theories applicable to the proposed class as a whole. Rather, whether revocation occurred in each instance depends on whether a particular text message is a reasonable revocation.").

Additionally, Defendant contended that the platform it utilized to make calls was not an ATDS within the scope of the TCPA. If this Court agreed, there would have been a significant reduction in the damages available to class members. *See, e.g.*, *Glasser v. Hilton Grand Vacations Co., LLC*, --- F.3d ----, No. 18-14499, 2020 WL 415811, at *7 (11th Cir. Jan. 27, 2020) (phone system used by timeshare marketer did not qualify as ATDS under the TCPA since systems targeted stored list of borrowers or likely timeshare consumers, rather than randomly or sequentially generating numbers.); *Gary v. TrueBlue, Inc.*, 346 F. Supp. 3d 1040, 1044 (E.D. Mich.

2018) (granting the defendant's motion for summary judgment, in part because the dialer at issue did not "ha[ve] the capacity to randomly or sequentially dial").

As well, it is highly unlikely that this matter would have concluded in the near future, absent settlement. Indeed, Defendant is a large company with the resources necessary to fight both liability and damage-related issues through summary judgment, trial, and appellate proceedings. Thus, the costs and expenses associated with continued litigation would have been high, and the wait long. *Accord Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("The costs associated with discovery in complex class actions can be significant.").

As a result, the complex issues encompassed by this action, together with the length of time and expense likely necessary to resolve this case by continued litigation, weigh in favor of preliminary approval. *See Vought v. Bank of Am., N.A.*, 901 F. Supp. 2d 1071, 1092 (C.D. Ill. 2012) ("Overall, the significant complexity of the issues this case presents, the increased length of time that would be necessary to resolve this case by continued litigation, and the corresponding dramatic increase in costs weigh in favor of approving the proposed settlement.").

### B. The stage of the proceedings and experience and views of counsel favor preliminary approval.

During the pendency of this litigation, the parties were able to assess the relative strengths and weaknesses of their respective positions, and to compare the benefits of the proposed settlement to further litigation. The parties litigated a motion to compel arbitration, and then engaged in written discovery, during which Plaintiff obtained voluminous documents from Defendant related to its calling policies and the calls it made to class members. Counsel for the parties then engaged in a series of arm's-length discussions about the facts of the case in defining the parameters of a settlement that led to the agreement here.

16

Also worth noting, Plaintiff's counsel has substantial experience in litigating TCPA class actions. *See e.g.*, *Johnson*, 315 F.R.D. at 503 (appointing GDR class counsel in TCPA class action that ultimately settled for $19.74 million); *Knapper v. Cox Commc'ns, Inc.*, No. 2:17-cv-00913-SPL, Doc. 126 (D. Ariz. Dec. 13, 2019) ($10.75 million class action settlement under the TCPA); *Sheean v. Convergent Outsourcing, Inc.*, 2:18-cv-11532-GCS-RSW, 2019 WL 6039921, at *3 (E.D. Mich. Nov. 14, 2019) ($3.75 million class action settlement under the TCPA and FDCPA). Counsel and the Court are therefore adequately informed to evaluate the fairness of the settlement.

Both Plaintiff and his counsel firmly believe that the settlement is fair, reasonable, and adequate, and in the best interests of the class. *Accord Swift v. Direct Buy, Inc.*, Nos. 2:11–CV–401–TLS, 2:11–CV–415–TLS, 2:11–CV–417–TLS, 2:12–CV–45–TLS, 2013 WL 5770633, at *7 (N.D. Ind. Oct. 24, 2013) ("Third, as the Court has already noted, the 'opinion of competent counsel' supports a determination that the settlement is fair, reasonable, and adequate under Rule 23.").

### C. The cash relief afforded by the settlement is significant and favors preliminary approval.

In evaluating the fairness of the consideration offered in settlement, it is not the role of the Court to second-guess the negotiated resolution of the parties. As the Ninth Circuit wrote:

> The court's intrusion upon what is otherwise a private, consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). And ss the Northern District of Indiana explained in approving a class action settlement in *Swift*:

> Although $20 (the expected pro rata award of the net settlement fund for each class member who filed a claim notice) is not significant in a vacuum, "a dollar today is worth a great deal more than a dollar ten years from now," *Reynolds,* 288 F.3d at 284, and a major benefit of the settlement is that class members will obtain these

> benefits much more quickly than had the parties not settled. The parties have informed the Court that this case, were it to proceed, would face numerous challenges such that, even if the case reached trial, the class members would not receive benefits for many years, if they received any at all. Faced with the prospect of receiving no recovery—both because DirectBuy might have succeeded in any aspect of what would have been a vigorous defense absent settlement and because DirectBuy had no unencumbered assets—Class Counsel is confident that payment of up to $20.00 per household is an excellent result in this litigation.

2013 WL 5770633, at *5.

Here, Defendant will pay $700,000 into a non-reversionary common fund to resolve this matter. Thus, despite the obstacles Plaintiff faced, he and his counsel negotiated a settlement that far exceeds in value many other TCPA class action settlements nationwide. Specifically, dividing the settlement payment ($700,000) by 750 (the number of class members) amounts to just over $933 per person.

In comparison, in *Esparza v. SmartPay Leasing, Inc.*, No. C 17-03421 WHA, 2019 WL 2372447, at *6 (N.D. Cal. June 5, 2019), the Northern District of California recently granted final approval in a similar revocation TCPA class action for $375 per person (settling claims of 23,144 class members for $8.679 million). What's more, other TCPA class actions have settled for significantly less on a per-class member basis. *See, e.g.*, *Gehrich*, 316 F.R.D. at 227-28 ($34 million for more than 32 million class members, or just more than $1 per person); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) ($39.98 million for more than 9,065,262 class members, or less than $5 per person).

Moreover, the settlement provides immediate cash relief to class members without requiring the submission of a claim form or any supporting documentation. After deducting the requested attorneys' fees, litigation costs and expenses, and incentive award, class counsel estimate that participating class members should receive at least $550 each, an amount on the higher end of TCPA settlements generally. *See In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d

781, 789 (N.D. Ill. 2015) (finding that $34.60 per person falls "within the range of recoveries" in a TCPA class action); *Rose v. Bank of Am. Corp.*, Nos. 11 C 2390 & 12 C 4009, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (approving TCPA class settlement where claimants received between $20 and $40 each); *Spillman v. RPM Pizza, LLC*, No. 10-349, 2013 WL 2286076, at *4 (M.D. La. May 23, 2013) (approving settlement that provides up to $15 cash payment for TCPA violation); *Arthur v. Sallie Mae, Inc.,* 10–CV198–JLR, 2012 WL 4075238, at *1 (W.D. Wash. Sept. 17, 2012) (over $100 per participating class member).[2]

In sum, the settlement here constitutes an excellent result. *See Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (finding that the cash recovery of $24 per claimant in a TCPA class action—a small fraction of the expected recovery here—is "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter").

**D.  The settlement treats class members equitably.**

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class

---

[2]     *See also Adams v. Allianceone Receivables Mgmt.*, *Inc.*, No. 3:08-cv-00248-JAH-WVG, ECF No. 113 (S.D. Cal. Apr. 23, 2012) (approximately $1.48 per class member); *In re Jiffy Lube Int'l, Inc.*, No. 11-02261, Doc. 97 (S.D. Cal.) (class members entitled to vouchers for services valued at $17.29 or a cash payment of $12.97); *Garret v. Sharps Compliance, Inc.*, No. 1:10-cv-04030, Doc. 74 (N.D. Ill.) ($28.13 recovery per claimant); *Agne v. Papa John's Int'l, et al.*, No. 2:10-cv-01139, Doc. 389 (W.D. Wash.) ($50 recovery plus $13 merchandise per claimant); *Clark v. Payless ShoeSource, Inc.*, No. 2:09-cv-00915, Docs. 61 at 3, 72 (W.D. Wash.) ($10 merchandise certificate per claimant); *Cubbage v. The Talbots, Inc. et al.*, No. 2:09-cv-00911, Doc. 114 (W.D. Wash.) ($40 or $80 merchandise certificate per claimant).

members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory committee's note (2018).

Here, each participating class member will be treated equitably as each participating class member will receive an equal portion of the $700,000 common fund after deducting attorneys' fees, costs, expenses, an incentive award to Plaintiff, and the costs of class notice and administration. Moreover, the release affects each participating class member in the same way as each participating class member will release the same claims. As such, this factor supports preliminary approval. *See Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at \*5 (S.D. Ill. Dec. 16, 2018) ("This proposal is fair and equitable because the class members' interests in the Avery judgment were undivided when they were lost and, thus, each class member's damages were identical. The proposed Settlement therefore entitles each class member to an equal, pro-rata share of the Settlement fund.").

**III.   This Court should approve the parties' notice plan.**

Pursuant to Rule 23(e), a court must, upon preliminary approval, "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. This notice must be the "best notice practicable," *see* Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Here, the parties agreed to a robust notice program to be administered by a well-respected third-party class administrator, First Class. Through the notice program, First Class will use all reasonable efforts to provide direct mail notice to class members.

The plan complies with Rule 23 and due process because, among other things, it informs class members, directly, of: (1) the nature of this action; (2) the essential terms of the parties'

settlement, including the class definition and claims asserted; (3) the binding effect of a judgment if the class member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion, and that class members may make an appearance through counsel; (5) information regarding Plaintiff's request for an incentive award and his request for an award of attorneys' fees and expenses for his counsel; and (6) how to make inquiries and where to find additional information regarding the settlement and claims at hand. Fed. R. Civ. P. 23(c)(2)(B); MANUAL FOR COMPLEX LITIGATION § 21.312. First Class will also establish a dedicated settlement website through which class members can review relevant documents filed with this Court.

The ultimate goal of the notice program is to make it as convenient as possible for class members to learn of, and participate in, the settlement. To that end, it is notable that class members need not take any action to participate in the settlement. That is, any member of the settlement class that does not exclude himself or herself will receive a settlement check without any further efforts on their part.

In short, this notice plan ensures that class members' due process rights are amply protected and should be approved. *See* Fed. R. Civ. P. 23(c)(2)(A).

## IV.    This Court should set a final fairness hearing.

The final step in the settlement approval process is a final fairness hearing, during which a court hears all evidence and argument necessary to finally evaluate the fairness of a settlement. Fed. R. Civ. P. 23(e)(2). After the final fairness hearing, the court then determines whether the settlement should be approved, and whether to enter a judgment and order of dismissal under Rule 23(e).

21

Here, the parties respectfully request that this Court set a date for a final fairness hearing, at this Court's convenience, approximately four months after it preliminarily approves the parties' settlement.

## Conclusion

Plaintiff respectfully requests that this Court enter the accompanying order granting preliminary approval of the settlement, certifying the class for settlement purposes, appointing Plaintiff as the representative of the class, appointing Plaintiff's counsel as counsel for the class, and directing class notice as described above.

Dated: February 6, 2020

Respectfully submitted,

*/s/ James L. Davidson*
James L. Davidson
Greenwald Davidson Radbil PLLC
7601 N. Federal Highway, Suite A-230
Boca Raton, FL 33487
Telephone: 561.826.5477
jdavidson@gdrlawfirm.com

*/s/ Matthew C. Lein*
Matthew C. Lein
Lein Law Offices
15692 Highway 63 North
Hayward, WI 54843
Telephone: 715.634.4273
Fax: 715.634.5051
mlein@leinlawoffices.com

Counsel for Plaintiff and the proposed class

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been electronically filed on February 6, 2020, via the Court Clerk's CM/ECF system, which will provide notice to the following counsel of record:

Daniel M. Blouin
Jordan P. Vick
SEYFARTH SHAW LLP
233 South Wacker Drive
Suite 8000
Chicago, Illinois 60606-6448

*/s/ James L. Davidson*
James L. Davidson
