UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

MAURICE JEWELL, JR.,
on behalf of himself others similarly situated,

                                Plaintiff,                            Case No.: 3:19-cv-00247-jdp

HSN, INC.,

                                Defendant,

---

### PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS, EXPENSES, AND AN INCENTIVE AWARD

**Introduction**

Class counsel, with Maurice Jewell, Jr.'s assistance, obtained a non-reversionary cash settlement fund of $700,000 to compensate 749 class members. This is a terrific result considering the very real and significant risks associated with litigating Mr. Jewell's claims. To be sure, the approximately $934 per class member settlement value eclipses that of many recent Telephone Consumer Protection Act ("TCPA") settlements by multiples, as does the expected participating class member recovery—which will exceed $580. As one commentator described the settlement:

> What is extraordinary about the settlement, however, is the large per dollar value here. Although class members are expected to recover $550.00 bucks each, the settlement amounts to $933.00 per class member (the rest of the money will go to pay lawyers and administration costs.) By comparison the "average" TCPA settlement comes in around $6-$75.00 a class member, depending on the "type" of settlement you're dealing with. Even more extraordinary—this settlement comes in with an appeal to SCOTUS pending and favorable case law developing on the ATDS issue nationwide.[1]

---

[1]     Troutman, Eric J., *$933.00 a Class Member Settlement?!—TCPA Class Settlement Sees Huge per-Class Member Recovery With No Claim Needed*, TCPAWorld (2020) (https://tcpaworld.com/2020/02/11/933-00-a-class-member-settlement-tcpa-class-settlement-sees-huge-per-class-member-recovery-with-no-claim-needed/) (last accessed May 15, 2020).

1

Against this backdrop, this Court should award class counsel's requested attorneys' fees of 35% of the net common fund, as well as reimbursement of litigation costs and expenses. Additionally, it should award an incentive payment to Mr. Jewell of $5,000 for his service as the class representative.[2]

## Summary of the Settlement

Through his motion for preliminary approval of the class settlement Mr. Jewell details the terms of the parties' agreement. *See* ECF No. 29 at 3-4. To summarize, HSN, Inc. ("Defendant") will create a non-reversionary, $700,000 common fund for the benefit of the following class:

> All persons and entities throughout the United States (1) to whom HSN, Inc. placed, or caused to be placed, one or more calls, (2) directed to a number assigned to a cellular telephone service, (3) by using an automatic telephone dialing system or an artificial or prerecorded voice, (4) from April 1, 2015 through December 12, 2019, (5) after HSN, Inc.'s records show that a "Never Call" Flag was added to that person's or entity's account.

Participating class members will receive a *pro rata* share of the settlement fund, after deducting attorneys' fees, costs, expenses, and an incentive award to Mr. Jewell.[3] While the exact per person recovery will not be known until after the July 8, 2020 exclusion deadline, each participating class member will receive at least $580.

---

[2] Though the deadline for Mr. Jewell to move for attorneys' fees is not until July 8, 2020, ECF No. 33 at 3, he files the instant motion at this early date given the Seventh Circuit's pronouncement that a fee motion in a class action must be filed prior to the objection deadline. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 637-38 (7th Cir. 2014) ("Rule 23(h) of the civil rules requires that a claim for attorneys' fees in a class action be made by motion, and 'notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.' Class counsel did not file the attorneys' fee motion until after the deadline set by the court for objections to the settlement had expired. That violated the rule.").

[3] Notably, class members need not take any action to receive a settlement payment.

**Argument**

I. **Class counsel's request for attorneys' fees in the amount of 35% of the net[4] common fund is appropriate and justified.**

Federal Rule of Civil Procedure 23 provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Seventh Circuit recognizes two approaches used to calculate attorneys' fees: the lodestar method, and the percentage-of-recovery method. *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 562 (7th Cir. 1994).[5] Generally, "a district judge has discretion to use either method, depending on the particular circumstances of the case." *Cook v. Niedert*, 142 F.3d 1004, 1010 (7th Cir. 1998).

In TCPA class actions like this one, where the defendant creates a common fund that is distributed in full, the percentage-of-the-fund method is "the normal practice," because "such an approach is more efficient for the court and more likely to yield an accurate approximation of the market rate." *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 794–95 (N.D. Ill. 2015); *see also Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 500–01 (N.D. Ill. 2015) ("The Court agrees with [class] counsel that the fee award in this case should be calculated based on a percentage-of-the-fund method . . . because fee arrangements based on the lodestar method require plaintiffs to monitor counsel and ensure that counsel are working efficiently on an hourly basis,

---

[4] The Seventh Circuit instructs courts to calculate the attorneys' fee amount by multiplying the appropriate market-based, risk-adjusted percentage by the amount of money actually paid to the class from the fund—excluding notice and administration costs, and any incentive award. *See, e.g.*, *Redman*, 768 F.3d at 630 ("The ratio that is relevant to assessing the reasonableness of the attorneys' fee that the parties agreed to is the ratio of (1) the fee to (2) the fee plus what the class members received.").

[5] Internal citations and quotations are omitted, and emphasis is added, unless otherwise noted.

something a class of [many] million lightly-injured plaintiffs likely would not be interested in doing."); *Williams v. Gen. Elec. Capital Auto Lease*, No. 94-cv-7410, 1995 WL 765266, at *9 (N.D. Ill. Dec. 6, 1995) ("The approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred on the class") (collecting cases).[6]

Moreover, the percentage-of-the-fund method is the best method for recreating the market for TCPA attorneys, because TCPA attorneys generally work on contingency and are not paid by lodestar. *See In re Capital One*, 80 F. Supp. 3d at 795 ("had an arm's length negotiation been feasible, the court believes that the class would have negotiated a fee arrangement based on a percentage of the recovery, consistent with the normal practice in consumer class actions"). And as the Seventh Circuit noted: "[t]he object in awarding a reasonable attorney's fee . . . is to give the lawyer what he would have gotten in the way of a fee in an arm's length negotiation, had one been feasible." *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992), *as amended on denial of reh'g* (May 22, 1992). "In other words the object is to simulate the market where a direct market determination is infeasible." *Id*.

In determining an appropriate award in a common fund case, a court must endeavor to award "the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001). In other words, the percentage awarded should "approximate the market rate that prevails between willing buyers and willing sellers of legal services." *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 957 (7th Cir. 2013).

---

[6] The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) *accord Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund.").

As set forth below, class counsel's requested fee award of $240,599.92—which is 35% of the net settlement fund[7]—is within the market rate for TCPA class actions in this Circuit, reasonable, and well-earned.

**A. Class counsel calculated its fee using the formula courts in the Seventh Circuit have adopted in TCPA class actions.**

"As the Seventh Circuit has held, attorney's fee awards in analogous class action settlements shed light on the market rate for legal services in similar cases." *Kolinek*, 311 F.R.D. at 501. In the Seventh Circuit, "the typical contingent fee is between 33 and 40 percent." *Gaskill*, 160 F.3d at 362; *see also Hale v. State Farm Mutual Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *10 (S.D. Ill. Dec. 16, 2018) ("Courts within the Seventh Circuit, and elsewhere, regularly award percentages of 33.33% or higher to counsel in class action litigation."); *Meyenburg v. Exxon Mobil Corp.*, No. 3:05-cv-15-DGW, 2006 WL 2191422, at *2 (S.D. Ill. July 31, 2006) ("The Court is independently aware that 33 1/3% to 40% (plus the cost of litigation) is the standard contingent fee percentages in this legal marketplace for comparable commercial litigation."); *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) ("A customary contingency fee would range from 33 1/3% to 40% of the amount recovered.").[8]

---

[7] Mr. Jewell anticipates his litigation costs and the costs of notice and settlement administration will be $7,571.65 in total. *See* Declaration of James L. Davidson ("Davidson Decl."), filed contemporaneously herewith, at ¶¶ 36-37. However, to the extent additional litigation costs are necessary, Mr. Jewell will provide an update to the Court in advance of the final fairness hearing.

[8] Here, class counsel entered into a contingent attorneys' fee agreement with Mr. Jewell that detailed that if a common fund is created class counsel would seek a percentage of the fund not to exceed 35%. *See* Davidson Decl., at ¶ 23.

In *In re Capital One*, the Northern District of Illinois undertook an extensive analysis to ascertain the market rate for TCPA class actions. 80 F. Supp. 3d at 788-809. To do so, the Court first conducted a survey of fee awards in other class action cases in the Seventh Circuit, concluding that the market rate for attorneys' fees in a typical class action settlement is 30% of the net settlement fund up to the first $10 million of recovery. *Id.* at 796-805.[9]

The Northern District of Illinois then considered the specific risks that class counsel undertook at the outset of the case, ultimately applying a 6% risk premium for a total fee award of 36% up to the first $10 million in recovery. *Id.* at 807; *see also Vergara et al. v. Uber Technologies, Inc.*, No. 15-cv-6942, Dkt. 111 (N.D. Ill. 2018) (awarding 36% of first $10 million); *Aranda v. Caribbean Cruise Line, Inc.*, No. 12-cv-4069, 2017 WL 1369741, at *9 (N.D. Ill. Apr. 10, 2017) (same) (*affirmed by Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792 (7th Cir. 2018), *cert. denied sub nom. McCabe v. Aranda*, 139 S. Ct. 923 (2019)); *Kolinek*, 311 F.R.D. at 502-03 ("The Court therefore finds that the market rate for legal services in this TCPA consumer class action, based on the degree of effort the attorneys would need to put in, the likelihood of success, and the risks associated with undertaking class representation, was 36 percent."); *see also Martin v. Dun & Bradstreet, Inc.*, No. 1:12–cv–215, 2014 WL 9913504, at *3 (N.D. Ill. Jan. 16, 2014) (awarding approximately 36.3% of common fund).[10] Notably, in awarding a 6% risk premium, the Northern

---

[9] Other courts in this Circuit have found a higher market rate in TCPA class actions. *See, e.g., Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 202 (N.D. Ill. 2018) ("…an award of 33.3% of the estimated net fund is reasonable and in line with the market.").

[10] *Accord Charvat v. Valente*, No. 12-5746, 2019 WL 5576932, at *12 (N.D. Ill. Oct. 28, 2019) ("Therefore, the Court finds that a 33.99% attorneys' fee award reflects the market rate and takes into account the risk of nonpayment."); *but see Wilkins v. HSBC Bank Nev., N.A.*, No. 14 C 190, 2015 WL 890566, at *11 (N.D. Ill. Feb. 27, 2015) (declining request for an upward risk adjustment above 30%).

District of Illinois deemed *In re Capital One* only "slightly riskier than a typical TCPA class action." 80 F. Supp. 3d at 806.

> **B. The risks associated with this litigation and benefits achieved for the class support an award of 35% of the net common fund.**
>
> **1. Class counsel faced a significant risk of non-payment in this matter.**

Courts must consider "the risk that class counsel assumed by undertaking class representation. Risk is necessarily a factor in determining the price class counsel would have charged in arm's length *ex ante* negotiations." *Kolinek*, 311 F.R.D. at 502. "Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman*, 739 F.3d at 958. For instance, "if the market-determined fee for a sure winner were $1 million the market-determined fee for handling a similar suit with only a 50 percent chance of a favorable outcome should be $2 million." *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 746 (7th Cir. 2011).

"[T]he need for such [a risk] adjustment is particularly acute in class action suits [because] [t]he lawyers for the class receive no fee if the suit fails, so their entitlement to fees is inescapably contingent." *Florin*, 34 F.3d at 565. As such, "a risk multiplier is not merely available in a common fund case but mandated, if the court finds that counsel had no sure source of compensation for their services." *Id.*; *see also Sutton v. Bernard*, 504 F.3d 688, 694 (7th Cir. 2007) (finding an abuse of discretion where the district court refused to account "for the risk of loss").

Moreover, the TCPA has its own unique obstacles that warrant an upward risk adjustment. As the Northern District of Illinois explained in *In re Capital One*:

> Class Counsel in this case faced a variety of serious obstacles to success in bringing the lawsuit, and faced the real prospect of recovering nothing. . . . Third, as Capital One has noted throughout this litigation, there are presently petitions before the FCC urging the FCC to (1) revise the TCPA's definition of "automatic telephone

dialing system" to exclude dialers like those used by Capital One, and (2) provide a safe harbor for all calls that Capital One inadvertently made to wrong numbers. Consequently, the longer this litigation were to continue, the longer Plaintiffs would be exposed to the possibility that the FCC would take action that might extinguish Plaintiffs' claims.

80 F. Supp. 3d at 805. This case was no different, and in fact created even greater risks than those in *In re Capital One*.

First, absent settlement, Defendant intended to move to strike Mr. Jewell's class allegations, arguing—given the Supreme Court's opinion in *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773 (2017)—that this Court lacked personal jurisdiction over the claims of those prospective class members who reside outside of Wisconsin.[11] At the time of the settlement here, some courts in this Circuit had applied *Bristol-Myers* to strike class allegations in Rule 23 cases. *See, e.g.*, *Mussat v. IQVIA Inc.*, No. 17 C 8841, 2018 WL 5311903, at *5 (N.D. Ill. Oct. 26, 2018) (applying "core reasoning" from *Bristol-Myers* to strike nationwide class allegations from TCPA putative class action because "whether it be an individual, mass, or class action, the defendant's rights should remain constant."). This case settled as the Seventh Circuit was set to rule on the application of *Bristol-Myers* to Rule 23 class actions.[12]

Second, at the time of the settlement, the Supreme Court had accepted a petition for writ of certiorari seeking review of the Fourth Circuit's decision that the TCPA's exemption for calls made to collect debt held by the federal government is a content-based regulation of speech that violates the First Amendment. *See Barr v. Am. Ass'n Political Consultants Inc., et al.*, Case No.

---

[11] Only 4 of the 749 class members reside in Wisconsin.

[12] The Seventh Circuit ultimately concluded that *Bristol-Myers* does not apply to Rule 23 class actions, reversing the district court's opinion in *Mussat*. *See Mussat v. IQVIA, Inc.*, 953 F.3d 441, 443 (7th Cir. 2020)

19-631. The Fourth Circuit further held that the proper remedy for the constitutional violation was to sever the exemption from the rest of the TCPA, thereby leaving in place the statute's other restrictions on automated telephone equipment. *See Am. Ass'n of Political Consultants, Inc. v. FCC*, 923 F.3d 159, 171 (4th Cir. 2019).[13] If the Supreme Court were to agree with the Fourth Circuit that the debt collection exemption is unconstitutional, but disagree as to its severability, then the Supreme Court could declare the entire TCPA unconstitutional. *See, e.g.*, *Ward v. Flagship Credit Acceptance, LLC*, No. 17-2069, 2020 WL 759389, at *9 (E.D. Penn. Feb. 13, 2020) ("Depending on the approach the Supreme Court takes [in *Barr*], the general constitutionality of the TCPA may be in question."). If the Supreme Court were to strike down the TCPA, then Mr. Jewell's and the class's TCPA claims would fail.

Third, some courts have refused to certify similar TCPA class actions because the determination of whether someone revoked consent to be called can be difficult to establish on a uniform basis. *See, e.g.*, *Tillman v. Ally Fin. Inc.*, No. 2:16-CV-313-FTM-99CM, 2017 WL 7194275, at *7 (M.D. Fla. Sept. 29, 2017) ("Moreover, plaintiff fails to demonstrate how consent (or lack thereof) can be established through class-wide proof, as Ally has offered evidence that it is common for customers to revoke consent and then reinstate it."); *Lanteri v. Credit Protection Ass'n L.P.*, No. 13-cv-01501, 2017 WL 3621299, at *4 (S.D. Ind. Aug. 22, 2017) ("The Court, then, must determine whether each of the text messages listed in the TCPA Stop Texting Class definition and the message sent by the Plaintiff constitute revocations of consent. For this reason, revocation of consent will not be proved or disproved on evidence and theories applicable to the proposed class as a whole. Rather, whether revocation occurred in each instance depends on whether a particular text message is a reasonable revocation."); *accord Wright v. Nationstar Mtg.*

---

[13] Oral argument in *Barr* took place on May 6, 2020.

*LLC*, 2016 WL 4505169, at *9 (N.D. Ill. Aug. 29, 2016) ("This consent defense would have posed a serious obstacle to class certification, because the defense would have presented manageability concerns.").

Fourth, Defendant contended that the platform it utilized to make calls was not an ATDS within the scope of the TCPA. *See, e.g.*, *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1312 (11th Cir. 2020) (phone system used by timeshare marketer did not qualify as ATDS under the TCPA since systems targeted stored list of borrowers or likely timeshare consumers, rather than randomly or sequentially generating numbers); *Gary v. TrueBlue, Inc.*, 346 F. Supp. 3d 1040, 1044 (E.D. Mich. 2018) (granting the defendant's motion for summary judgment, in part, because the dialer at issue did not "ha[ve] the capacity to randomly or sequentially dial"). And notably, after the parties here reached the settlement, the Seventh Circuit held that a telephone system does not qualify as an ATDS if it lacks the capacity to generate random or sequential numbers. *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 469 (7th Cir. 2020). Thus, had Mr. Jewell not settled when he did, and had the Court found Defendant's system was not an ATDS based upon the pronouncements in *Gadelhak*, there would have been a significant reduction in the damages available to class members.

Fifth, though Mr. Jewell sought to represent a class of persons under the Wisconsin Consumer Act ("WCA"), Wis. Stat. § 427.101, *et seq.*, *see* ECF No 1-1 at 6, discovery revealed that at most 4 persons fell within the definition of the proposed WCA class. Given that the proposed WCA class consisted of only 4 persons, it is unlikely Mr. Jewell would have obtained certification of the WCA class. *See, e.g.*, *Wright & Miller*, 7A Federal Practice and Procedure § 1762 (3d ed.) ("Although there is no definite standard as to what size class satisfies Rule 23(a)(1), ... [c]lasses containing [between two and 26] members have been held to be too small to allow an action to be

maintained under Rule 23."); *Pruitt v. City of Chicago, Illinois*, 472 F.3d 925, 926–27 (7th Cir. 2006) (affirming decision in employee discrimination case in which district court denied class certification on ground that plaintiffs failed to show that joining 40 plaintiffs would be impracticable).

Sixth, class counsel overcame Defendant's attempt to compel this matter to arbitration. *Jewell v. HSN, Inc.*, 19-cv-247-jdp, 2019 WL 5802619, at *4 (W.D. Wis. Nov. 7, 2019). Had Defendant succeeded on its arbitration motion, Mr. Jewell and class counsel would have been left to pursue this matter in a single-party arbitration with no hope of recovery for absent class members.

Finally, it is highly unlikely that this matter would have concluded in the near future, absent settlement. Indeed, Defendant is a large company with the resources necessary to fight both liability and damage-related issues through summary judgment, trial, and appellate proceedings. Thus, the costs and expenses associated with continued litigation would have been high, and the wait long. *Accord Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("The costs associated with discovery in complex class actions can be significant.").

In sum, Mr. Jewell faced a number of risks outside of his control, several of which could have put a complete end to this matter. These risks—some of which, as a result of potential looming changes in law, existed on top of ordinary risks associated with litigating any class action—made the legal landscape in which Mr. Jewell litigated this matter extraordinarily uncertain. Consequently, at the beginning of this matter, and throughout the litigation that followed, class counsel faced an undeniable risk of nonpayment.

### 2. Class counsel achieved substantial benefits for the class members.

Despite the significant hurdles that stood in the way of a successful resolution to this matter, class counsel obtained an outstanding result for Mr. Jewell and the class. In particular, the approximately $934 per class member settlement value eclipses the value of many recent TCPA settlements in this Circuit. *See, e.g.*, *Leung*, 326 F.R.D. at 196 ($22.51 per class member); *Johnson v. Navient Solutions, Inc.*, No. 1:15-CV-0716-LJM, ECF No. 177 (S.D. Ind. July 13, 2017) (less than $50 per class member); *Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*, No. 16-CV-488-SMY-RJD, 2017 WL 5724208, at *1 (S.D. Ill. Apr. 26, 2017) ($42.46 per class member); *Kolinek*, 311 F.R.D. at 493 ($1.20 per class member); *Wilkins*, 2015 WL 890566, at *3 ($4.41 per class member); *In re Capital One*, 80 F. Supp. 3d at 789 ($4.31 per class member).[14]

Moreover, given that the settlement does not require a claims process, each participating class member will receive a minimum payment of at least $580—even after deducting the requested attorneys' fees, costs, expenses, and proposed incentive award from the common fund. This excellent recovery greatly exceeds participating class member recoveries in the vast majority of TCPA class actions. *See, e.g.*, *Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (finding that the cash recovery of $24 per claimant in a TCPA class action—significantly less than what participating class members will

---

[14] *See also Esparza v. SmartPay Leasing, Inc.*, No. C 17-03421 WHA, 2020 WL 465863, at *2 (N.D. Cal. Jan. 28, 2020) ($375 per class member); *Knapper v. Cox Commc'ns, Inc.*, No. 2:17-cv-00913, ECF No. 126 (D. Ariz. 2019) ($77 per class member); *Sheean v. Convergent Outsourcing, Inc.*, No: 2:18-cv-11532-GCS-RSW, at *3 (E.D. Mich. Nov. 14, 2019) ($10.60 per class member); *Johnson v. NPAS Solutions, LLC*, No. 9:17-cv-80393, 2017 WL 6060778, at *1 (S.D. Fla. Dec. 4, 2017) ($7.97 per class member); *Ott v. Mortg. Investors Corp. of Ohio, Inc.*, 2016 WL 54678, at *1 (D. Or. Jan. 5, 2016) ($2.10 per class member); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-cv-1290, 2013 WL 444619, at *7 (S.D. Cal. Feb. 5, 2013) ($2.90 per class member).

receive here—is "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter"); *In re Capital One*, 80 F. Supp. 3d at 790 (approving $34.60 recovery, which "does not seem so miniscule in light of the fact that class members did not suffer any actual damages beyond a few unpleasant phone calls").[15]

### 3. The stakes of this case support class counsel's fee request.

The stakes of this case were high. Defendant faced a class action lawsuit for which it ultimately agreed to pay $700,000 to resolve. Hundreds of unnamed class members faced the risk of no recovery. And class counsel not only faced the risk of non-payment for their work in litigating this matter, but the "opportunity costs of turning down other lucrative clients." *Heekin v. Anthem, Inc.*, No. 1:05-cv-01908-TWP-TAB, 2012 WL 5878032, at *5 (S.D. Ind. Nov. 20, 2012); *see also Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-CV-3066-JEC, 2008 WL 11234103, at *2 (N.D. Ga. Mar. 4, 2008) ("[S]ubstantial and concentrated time investment by plaintiffs' counsel would tend to preclude other lucrative opportunities, thus warranting a higher percentage of the fund.").

As a result of class counsel's efforts, class members will receive at least $580 each in damages—damages that they may not have pursued on their own given the absence of a fee shifting

---

[15] *See also Rose v. Bank of Am. Corp.*, Nos. 11 C 2390 & 12 C 4009, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) (approving TCPA class settlement where claimants received between $20 and $40 each); *Kolinek*, 311 F.R.D. at 493 (approximately $30 per claimant); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118 JSW, 2014 WL 1309352 (N.D. Cal. Mar. 31, 2014) (less than $50 per TCPA claimant); *Arthur v. Sallie Mae, Inc.*, 10–CV198–JLR, 2012 WL 4075238 (W.D. Wash. Sept. 17, 2012) ($20-$40 per participating class member); *Kramer v. Autobytel, Inc.*, No. 10-cv- 2722, ECF No. 148 (N.D. Cal. Jan. 27, 2012) (providing for a cash payment of $100 to each class member); *Weinstein v. The Timberland Co.*, No. 06-cv-00484, ECF No. 93 (N.D. Ill. Dec. 18, 2008) (providing for a cash payment of $150 to each class member); *Agne v. Papa John's Int'l, et al.*, No. 2:10-cv-01139, ECF No. (W.D. Wash.) ($50 recovery plus $13 merchandise per claimant); *Cubbage v. The Talbots, Inc. et al.*, No. 2:09-cv-00911, ECF No. 114 (W.D. Wash.) ($40 or $80 merchandise certificate per claimant).

provision in the TCPA. *See, e.g.*, *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 699 (S.D. Fla. 2015) (noting that the small potential recovery in individual TCPA actions reduced the likelihood that class members will bring suit); *St. Louis Heart Ctr., Inc. v. Vein Ctrs. for Excellence, Inc.*, No. 12-174, 2013 WL 6498245, at *11 (E.D. Mo. Dec. 11, 2013) (explaining that because the statutory damages available to each individual class member are small, it is unlikely that class members have an interest in individually controlling the prosecution of separate actions). In other words, the settlement provides class members significant monetary relief they would likely never have pursued on their own.

Given the foregoing, an attorneys' fee award of $240,599.92—35% of the common fund after deducting settlement administration costs, litigation expenses and Mr. Jewell's proposed incentive award—is justified.

## II. Mr. Jewell's request for a $5,000 incentive award is appropriate and justified.

Incentive awards "are justified when necessary to induce individuals to become named representatives." *Charvet*, 2019 WL 5576932, at *10. "In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

Here, Mr. Jewell has been an active participant in this matter, reading all pertinent filings and frequently communicating with class counsel. *See* Davidson Decl., ¶¶ 28, 30. He also prepared responses to interrogatories and document requests served on him by Defendant. *Id.*, at ¶ 30. Furthermore, he agreed, prior to initiating his claims, not to advance his individual interests over or to the detriment of the interests of the class. *Id.*, at ¶ 28. And as a result of his actions, each participating class member will receive at least $580.

For these reasons, Mr. Jewell seeks an incentive award of $5,000. This amount is in line with incentive awards provided by district courts in analogous matters. *See Douglas v. Western Union Co.*, 328 F.R.D. 204, 219 (N.D. Ill. 2018) ("This case did not proceed very far before it settled. Still, Douglas attached his name to the suit, thereby subjecting himself to the risk of discovery and a cost award were judgment entered against him. Courts in this District have granted $5,000 incentive awards to named plaintiffs in TCPA cases. The court therefore grants Douglas's request for a $5,000 incentive award."); *Kolinek*, 311 F.R.D. at 503 ("This case did not proceed past the earliest phases of formal discovery before it was settled. Still, Kolinek attached his name to this litigation and participated in pre-filing investigation and informal and formal discovery. Although some objectors urge the Court to reject the proposed incentive award because it is dramatically more than the amount claiming class members will recover, a $5,000 reward is justified based on Kolinek's role working with class counsel, approving the settlement agreement and fee application, and volunteering to play an active role if the parties continued litigating through trial."); *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F.Supp.2d 1028, 1041 (N.D. Ill. 2011) (collecting cases).[16]

### III. Class counsel's request for reimbursement of litigation costs and expenses is appropriate and justified.

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . . reasonable litigation expenses from that fund." *In re Rent-*

---

[16] *See also Johnson*, No. 1:15-CV-0716-LJM, at ECF No. 177 (awarding $25,000 incentive award to one named plaintiff and $5,000 incentive awards to the other two named plaintiffs); *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 CV 2898, 2012 WL 651727, at *16-17 (N.D. Ill. Feb. 28, 2012) (awarding $25,000 incentive awards to each of the seven named plaintiffs); *Jones v. I.Q. Data Int'l, Inc.*, No. 1:14-CV-00130-PJK, 2015 WL 5704016, at *2 (D.N.M. Sept. 23, 2015) ($20,000 incentive award to a named TCPA plaintiff from a $1 million common fund); *Prater*, No.: 4:14–cv–00159–ERW, 2015 WL 8331602, at *3 (E.D. Mo. Dec. 7, 2015) ($20,000 incentive award to a named TCPA plaintiff from a $6.75 million common fund).

*Way Sec. Litig.*, 305 F. Supp. 2d 491, 519 (W.D. Pa. 2003). Here, to date, class counsel has incurred $456.60 in costs and expenses in connection with this matter, which are for the filing fee for the complaint, service of process, and PACER charges. *See* Davidson Decl., ¶ 36 (detailing litigation costs and expenses incurred). Importantly, the categories of expenses for which class counsel seek reimbursement are the type of expenses routinely charged to paying clients in the marketplace and, therefore, are properly reimbursed under Rule 23. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (awarding as reasonable and necessary, reimbursement for "1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees"); *see also* Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and *nontaxable* costs that are authorized by law or by the parties' agreement.") (emphasis added). Thus, this Court should approve class counsel's reimbursement for litigation costs and expenses incurred in this matter.

## Conclusion

Mr. Jewell respectfully requests that this Court (1) award attorneys' fees in the amount of 35% of the net common fund, (2) award the reimbursement of $456.60 in litigation costs and expenses, and (3) approve a $5,000 incentive award for Mr. Jewell. Of note, Defendant does not oppose these requests.

Dated: June 9, 2020

Respectfully submitted,

*/s/ James L. Davidson*
James L. Davidson
Greenwald Davidson Radbil PLLC
7601 N. Federal Highway, Suite A-230
Boca Raton, FL 33487
Telephone: 561.826.5477
jdavidson@gdrlawfirm.com

*/s/ Matthew C. Lein*
Matthew C. Lein
Lein Law Offices
15692 Highway 63 North
Hayward, WI 54843
Telephone: 715.634.4273
Fax: 715.634.5051
mlein@leinlawoffices.com

Class counsel

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been electronically filed on June 9, 2020, via the Court Clerk's CM/ECF system, which will provide notice to the following counsel of record:

Daniel M. Blouin
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Counsel for Defendant

*/s/ James L. Davidson*
James L. Davidson