# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WISCONSIN

---

MAURICE JEWELL, JR.,
on behalf of himself and others similarly situated,

                 Plaintiff,               Case No.: 3:19-cv-00247-jdp

HSN, INC.,

                 Defendant,

---

## PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF
## CLASS ACTION SETTLEMENT

The settlement reached here requires that HSN, Inc. ("Defendant") create a non-reversionary class settlement fund of $700,000 to compensate 749[1] participating members of the following class:

> All persons and entities throughout the United States (1) to whom HSN, Inc. placed, or caused to be placed, one or more calls, (2) directed to a number assigned to a cellular telephone service, (3) by using an automatic telephone dialing system or an artificial or prerecorded voice, (4) from April 1, 2015 through December 12, 2019, (5) after HSN, Inc.'s records show that a "Never Call" Flag was added to that person's or entity's account.

*See* ECF No. 33. As a result, after deducting the costs of notice and settlement administration, attorneys' fees and expenses, and an incentive award, each participating class member will receive at least $592.[2] This tremendous recovery far exceeds that in most Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, class action settlements that have garnered final approval, and

---

[1]      While the Parties originally believed there to be 750 class members, they have since determined that there are 749 class members.

[2]      The settlement agreement calls for a second distribution to participating class members who cashed their initial settlement checks if there remains money in the settlement fund sufficient to pay at least five dollars to each of those persons. *See* ECF No. 30-1 at 15. As a result, participating class members' recoveries may exceed $592.

represents a remarkable result for the class members.

Following preliminary approval, First Class, Inc.—the Court-appointed settlement administrator—implemented a robust notice program by providing direct mail notice to all class members at their last known address according to Defendant's records. Prior to the mailing, First Class took its usual initial steps of de-duplicating class members' records and updating addresses through the U.S. Postal Service. *See* Affidavit of Bailey Hughes, filed contemporaneously herewith ("Hughes Aff."), at ¶¶ 7-8. Notices were then disseminated on May 8, 2020. *Id.* at ¶ 9. And when 59 notices were returned undeliverable with no forwarding addresses, First Class undertook additional search measures to attempt to locate updated addresses for those class members. *Id.* at ¶¶ 11-13. In addition, First Class has maintained a settlement website that contains relevant documents including the class action complaint, settlement agreement, and class notice.[3]

The Class's reaction to the settlement is universally positive—not one person objected to the terms of the settlement or asked to be excluded from the settlement. *Id.*, at ¶¶ 15-16. Moreover, no objections resulted from notice provided to governmental agencies under the Class Action Fairness Act, ("CAFA"), either.

Given this excellent result, Mr. Jewell respectfully requests that this Court finally approve the settlement and enter a final judgment and order in the form agreed to by the parties.

## Argument

I. **This Court should finally approve the parties' settlement as fair, reasonable, and adequate under Rule 23 and applicable Seventh Circuit law.**

The Seventh Circuit identifies a number of factors to assess whether a settlement proposal is fundamentally fair, reasonable and adequate: (1) the strength of plaintiff's case compared to the

---

[3]     *See* http://www.jewelltcpasettlement.com/.

terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to the settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *See Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).[4] Rule 23(e) itself requires a court to consider several additional factors, including that the class representative and class counsel have adequately represented the class, and that the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e).

In applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are favored by federal courts. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits"). "Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

Here, each relevant factor supports the conclusion that the parties' negotiated settlement is fundamentally fair, reasonable, and adequate, and should thus be approved.[5]

---

[4]     Internal citations and quotations are omitted, and emphasis is added, unless otherwise noted.

[5]     This Court should also affirm certification of the settlement class for the same reasons set forth in Plaintiff's motion for preliminary approval of class action settlement. *See* ECF No. 29 at 4-13.

**A.** **The strengths of Mr. Jewell's case and the risks inherent in continued litigation and securing class certification favor final approval of the settlement.**

**1.** **Participating class members will receive a significant cash payment.**

"The most important factor" in determining whether a proposed settlement satisfies Rule 23 is the "strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel*, 463 F.3d at 653. "But a settlement is a compromise, and courts need not—and indeed should not—reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re Capital One Telephone Consumer Protection Act Litig.*, 80 F. Supp. 3d 781, 790 (N.D. Ill. 2015).

The settlement here provides an outstanding result for the class. In particular, the approximately $934 per-class-member gross settlement value greatly exceeds the value of many recent TCPA settlements in this Circuit. *See, e.g.*, *Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 196 (N.D. Ill. 2018) ($22.51 per class member); *Johnson v. Navient Solutions, Inc.*, No. 1:15-CV-0716-LJM, ECF No. 177 (S.D. Ind. July 13, 2017) (less than $50 per class member).[6]

Moreover, each participating class member will receive at least $592 after deducting the requested attorneys' fees, costs, expenses, and proposed incentive award from the common fund. This excellent recovery greatly exceeds participating class member recoveries in the vast majority of TCPA class actions. *See, e.g.*, *Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (finding that the cash recovery of $24 per

---

[6]     *See also Esparza v. SmartPay Leasing, Inc.*, No. C 17-03421 WHA, 2020 WL 465863, at *2 (N.D. Cal. Jan 28, 2020) ($375 per class member); *Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*, No. 16-CV-488-SMY-RJD, 2017 WL 5724208, at *1 (S.D. Ill. Apr. 26, 2017) ($41.55 per class member); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) ($1.20 per class member); *In re Capital One*, 80 F. Supp. 3d at 789 ($2.72 per class member); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14 C 190, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) ($2.95 per class member).

claimant in a TCPA class action—significantly less than what participating class members will receive here—is "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter"); *In re Capital One*, 80 F. Supp. 3d at 790 (approving $34.60 recovery, which "does not seem so miniscule in light of the fact that class members did not suffer any actual damages beyond a few unpleasant phone calls").[7]

### 2. The class faced substantial risks to obtaining a monetary recovery absent settlement.

The cash relief afforded by the settlement is even more impressive considering the significant risks class members faced if this case had proceeded toward a ruling on class certification, dispositive motions, and trial.

Indeed, absent settlement, Defendant intended to move to strike Mr. Jewell's class allegations, arguing—given the Supreme Court's opinion in *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773 (2017)—that this Court lacked personal jurisdiction over the claims of those prospective class members who reside outside of Wisconsin.[8] At the time of the settlement here, some courts in this Circuit had applied *Bristol-Myers* to strike nationwide class allegations in Rule 23 cases. *See, e.g.*, *Mussat v. IQVIA Inc.*, No. 17 C 8841, 2018 WL 5311903, at *5 (N.D. Ill. Oct. 26, 2018) (applying "core reasoning" from *Bristol-Myers* to strike nationwide class allegations from TCPA putative class action because "whether it be an individual, mass, or

---

[7]     *See also Kolinek*, 311 F.R.D. at 493 (approximately $30 per claimant); *Rose v. Bank of Am. Corp.*, Nos. 11 C 2390 & 12 C 4009, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) (approving TCPA class settlement where claimants received between $20 and $40 each); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118 JSW, 2014 WL 1309352 (N.D. Cal. Mar. 31, 2014) (less than $50 per TCPA claimant); *Arthur v. Sallie Mae, Inc.*, 10–CV198–JLR, 2012 WL 4075238 (W.D. Wash. Sept. 17, 2012) ($100 per participating class member); *Kramer v. Autobytel, Inc.*, No. 10-cv- 2722, ECF No. 148 (N.D. Cal. Jan. 27, 2012) (providing for a cash payment of $100 to each class member).

[8]     Only four of the 749 class members reside in Wisconsin.

class action, the defendant's rights should remain constant."). This case settled as the Seventh Circuit was set to rule on the application of *Bristol-Myers* to Rule 23 class actions.[9]

Second, at the time of the settlement, the Supreme Court had agreed to review the Fourth Circuit's decision that the TCPA's exemption for calls made to collect debt held by the federal government is a content-based regulation of speech that violates the First Amendment. *See Barr v. Am. Ass'n Political Consultants Inc.*, No. 19-631. The Fourth Circuit further held that the proper remedy for the constitutional violation was to sever the exemption from the rest of the TCPA, thereby leaving in place the statute's other restrictions on automated telephone equipment. *See Am. Ass'n of Political Consultants, Inc. v. FCC*, 923 F.3d 159, 171 (4th Cir. 2019). If the Supreme Court had agreed with the Fourth Circuit that the debt collection exemption is unconstitutional, but disagreed as to its severability, then the Supreme Court could have declared the entire TCPA unconstitutional. *See, e.g.*, *Ward v. Flagship Credit Acceptance, LLC*, No. 17-2069, 2020 WL 759389, at *9 (E.D. Penn. Feb. 13, 2020) ("Depending on the approach the Supreme Court takes [in *Barr*], the general constitutionality of the TCPA may be in question."). Such a ruling would have been fatal to Mr. Jewell's and the class's TCPA claims.[10]

Third, the card agreement that Mr. Jewell entered into with Comenity Capital Bank ("Comenity") for his HSN credit card contained a consent provision that allowed Comenity, as well as certain third-parties, to call his cell phone using an automatic telephone dialing system ("ATDS") or a pre-recorded voice to collect on his account. *See* ECF No. 10-2 at 3. Two Circuit

---

[9]     The Seventh Circuit ultimately concluded that *Bristol-Myers* does not apply to Rule 23 class actions, reversing the district court's opinion in *Mussat*. *See Mussat v. IQVIA, Inc.*, 953 F.3d 441, 443 (7th Cir. 2020).

[10]    The Supreme Court affirmed the Fourth Circuit's ruling in *Barr* on July 6, 2020. *See Barr v. Am. Ass'n Political Consultants Inc.*, --- S.Ct. ---, No. 19-631, 2020 WL 3633780, at *2 (July 6, 2020).

Courts of Appeals have held that the TCPA does not permit a party who agrees to be contacted as part of a bargained-for exchange to unilaterally revoke that consent. *See Medley v. Dish Network, LLC*, No. 18-13841, 2020 WL 2092594, at *6 (11th Cir. May 1, 2020); *Reyes v. Lincoln Auto. Fin. Servs.*, 861 F.3d 51, 56 (2nd Cir. 2017). If Defendant was entitled to enforce the consent provision in the card agreement, and were this Court to find that a consumer cannot revoke contracted-for consent, Mr. Jewell's claims would fail.

Fourth, some courts have refused to certify similar TCPA class actions because the determination of whether someone revoked consent to be called can be difficult to establish on a uniform basis. *See, e.g.*, *Tillman v. Ally Fin. Inc.*, No. 2:16-CV-313-FTM-99CM, 2017 WL 7194275, at *7 (M.D. Fla. Sept. 29, 2017) ("Moreover, plaintiff fails to demonstrate how consent (or lack thereof) can be established through class-wide proof, as Ally has offered evidence that it is common for customers to revoke consent and then reinstate it."); *Lanteri v. Credit Protection Ass'n L.P.*, No. 13-cv-01501, 2017 WL 3621299, at *4 (S.D. Ind. Aug. 22, 2017) ("The Court, then, must determine whether each of the text messages listed in the TCPA Stop Texting Class definition and the message sent by the Plaintiff constitute revocations of consent. For this reason, revocation of consent will not be proved or disproved on evidence and theories applicable to the proposed class as a whole. Rather, whether revocation occurred in each instance depends on whether a particular text message is a reasonable revocation."); *accord Wright v. Nationstar Mtg. LLC*, No. 14 C 10457, 2016 WL 4505169, at *9 (N.D. Ill. Aug. 29, 2016) ("This consent defense would have posed a serious obstacle to class certification, because the defense would have presented manageability concerns.").

Fifth, Defendant contended that the platform it utilized to make calls was not an ATDS within the scope of the TCPA because its calling equipment did not have the capacity to randomly

or sequentially dial telephone numbers. *See, e.g.*, *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1312 (11th Cir. 2020) (phone system did not qualify as ATDS because the system dialed from a stored list, rather than randomly or sequentially generating numbers); *Gary v. TrueBlue, Inc.*, 346 F. Supp. 3d 1040, 1044 (E.D. Mich. 2018) (granting the defendant's motion for summary judgment, in part, because the dialer at issue did not "ha[ve] the capacity to randomly or sequentially dial"). And notably, after the parties here reached the settlement, the Seventh Circuit held that a telephone system does not qualify as an ATDS if it lacks the capacity to generate random or sequential numbers. *See Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 469 (7th Cir. 2020). Thus, had Mr. Jewell not settled when he did, and had the Court found Defendant's system was not an ATDS based upon the pronouncements in *Gadelhak*, there would have been a significant reduction in the damages available to class members.

Sixth, though Mr. Jewell sought to represent a class of persons under the Wisconsin Consumer Act ("WCA"), Wis. Stat. § 427.101, *et seq.*—*see* ECF No 1-1 at 6—discovery revealed that only four persons, including Mr. Jewell, had potential WCA claims against Defendant. Given as much, it is unlikely Mr. Jewell would have obtained certification of the WCA class. *See, e.g.*, *Wright & Miller*, 7A Federal Practice and Procedure § 1762 (3d ed.) ("Although there is no definite standard as to what size class satisfies Rule 23(a)(1), ... [c]lasses containing [between two and 26] members have been held to be too small to allow an action to be maintained under Rule 23."); *Pruitt v. City of Chicago, Illinois*, 472 F.3d 925, 926-27 (7th Cir. 2006) (affirming decision in discrimination case in which district court denied class certification because plaintiffs failed to show that joining 40 plaintiffs would be impracticable).

Finally, it is highly unlikely that this matter would have concluded in the near future, absent settlement. Indeed, Defendant is a large company with the resources necessary to fight both

liability and damage-related issues through summary judgment, trial, and appellate proceedings. *See, e.g.*, *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) ("Proceeding without a settlement in this action thus exposed the Class to risk in connection with establishing the factual bases to support some of the Class's legal theories, in proving damages, and in collecting any amount that is ultimately awarded."). Thus, the costs and expenses associated with continued litigation would have been high, and the wait long. *Accord Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("The costs associated with discovery in complex class actions can be significant."); *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *3 (E.D. Mich. Dec. 12, 2013) ("Settlement provides a certain and immediate benefit to the class members and outweighs the risk and cost of a trial on the merits. The prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery.").

Given these considerations, final approval of the settlement is appropriate to avoid the uncertainties of continued litigation.

### B. The stage of the proceedings and experience and views of counsel favor final approval.

During the pendency of this litigation, the parties were able to assess the relative strengths and weaknesses of their positions, and to compare the benefits of the proposed settlement to further litigation. The parties litigated a motion to compel arbitration, ECF No. 23, and Mr. Jewell thereafter issued, and Defendant answered and responded to, voluminous written discovery requests, including interrogatories, requests for production, and requests for admission. Mr. Jewell also served a subpoena to produce documents on Tracfone, his cellular telephone provider. Defendant, for its part, also propounded written discovery on Plaintiff.

Mr. Jewell thereafter submitted a class settlement demand to Defendant, which led to several weeks of arm's-length negotiations before the settlement here was reached. *See, e.g.*, *Kolinek*, 311 F.R.D. at 496 ("After Walgreens provided its answer and affirmative defenses, the parties engaged in informal discussions and served and responded to written discovery requests. The plaintiffs also took the deposition of Walgreens's Rule 30(b)(6) witness, and they engaged in mediation that included the exchange of multiple settlement proposals. The parties and the Court are therefore well positioned to assess the strength of this case and the merits of Kolinek's claims, and this factor therefore weighs in favor of approval.").

Counsel, who have substantial experience in litigating class actions, *see, e.g.*, ECF No. 30 at ¶¶ 8-15, are adequately informed to evaluate the fairness of the settlement, and in turn, provided the Court with sufficient information to also adequately evaluate the fairness of the settlement. *See In re Capital One*, 80 F. Supp. 3d at 792 ("The court accepts that Class Counsel in this case are experienced litigators, especially in the TCPA context, and that they strongly support the settlement."); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). To be sure, both Mr. Jewell and his counsel firmly believe that the settlement is fair, reasonable, and adequate, and in the best interests of the class. *Accord Swift v. Direct Buy, Inc.*, Nos. 2:11–CV–401–TLS, 2:11–CV–415–TLS, 2:11–CV–417–TLS, 2:12–CV–45–TLS, 2013 WL 5770633, at *7 (N.D. Ind. Oct. 24, 2013) ("Third, as the Court has already noted, the 'opinion of competent counsel' supports a determination that the settlement is fair, reasonable, and adequate under Rule 23.").

## C.   The settlement treats class members equitably.

Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members equitably. To that end, this Court asked the parties to address (1) why a pro rata

distribution of the settlement fund is a fair distribution method and (2) why the distribution method does not distinguish between members with claims under both the TCPA and the WCA and members with claims under only one statute. ECF No 33 at 2.

> **1.     A pro rata distribution of the settlement fund is a fair method of distribution to compensate participating class members.**

The claims settled here are based on calls made to class members' cellular telephone numbers after Defendant notated their accounts with a "Never Call" flag. *See* ECF No. 30-1 at 6-7 (defining the "Settlement Class"). While Defendant possesses data concerning the number of calls it made after it attached a "Never Call" flag to a particular account, compensating class members per call would require the parties to obtain additional information particular to each class member, including how many calls were actually connected, whether the class member was using a call blocking application, whether the class member received any of the subsequent calls on a VOIP line, and whether the class member was the primary user of the phone during each of the post-"Never Call" flag calls.

Obtaining that information, which could potentially involve the need for class member submissions as well as subpoenas to cellular telephone providers, could be burdensome from an administrative perspective and as a result could substantially increase administrative expenses, therefore reducing the amount of money available to class members. As a result, courts have repeatedly rejected the assertion that TCPA class settlement funds are best disseminated on a per-call basis. *See, e.g.*, *Douglas v. Western Union Co.*, 328 F.R.D. 204, 217 (N.D. Ill. 2018) ("Yet conducting individual inquiries into the number of violations for each class member either would be administratively unmanageable or, if not, would entail vastly increased administrative expenses, reducing the amount available to claimants."); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 231 (N.D. Ill. 2016) (same); *Wilkins*, 2015 WL 890566, at *8 ("The court therefore agrees with

11

Class Counsel and HSBC that a call-based claims process is inadvisable, particularly because the increased administration costs would result in a corresponding decrease in the money available to the class."); *In re Capital One*, 80 F. Supp. 3d at 793 ("The court also accepts Class Counsel's representation that a call-based claims process would be extremely costly to administer and is inadvisable given the fact that increased administration costs would result in a corresponding decrease in the money available to the class.").

Instead, the parties here have proposed a distribution method that requires no class member submissions and treats each participating class member equally while keeping administration costs to a minimum so as not to dilute the settlement fund. *Accord Burrow v. Forjas Taurus S.A.*, No. 16-cv-21606, 2019 WL 4247284, at *10 (S.D. Fla. Sept. 6, 2019) ("The Settlement also treats Settlement Class Members equally and fairly. There is no distinction between the benefits offered, and all Settlement Class Members receive the benefit of the Enhanced Warranty Service automatically. Furthermore, the steps Settlement Class Members must take to receive the Enhanced Warranty Service and the Inconvenience Payment are far from onerous."). Moreover, any class members who believed they were better served attempting to pursue a recovery for each call had the ability to exclude themselves from the settlement and pursue their claims individually. *See Charvat v. Valente*, No. 12:5746, 2019 WL 5576932, *6 (N.D. Ill. Oct. 28, 2019) ("Moreover, the ability to opt out of the settlement allows class members who received more than three calls to pursue the possibility of a greater award in an individual suit."). No class members chose to do so.

Given the foregoing, a pro rata distribution of the settlement fund is a fair method to compensate participating class members without diminishing the fund with additional administration expenses.

**2.  There is no need to distinguish between participating class members with WCA and TCPA claims, and those with TCPA claims only, as all class members are releasing their TCPA claims and analogous state law claims relating to the use of an ATDS.**

Additionally, there is no need to distinguish between participating class members with WCA and TCPA claims, and those with TCPA claims only. Class members are dispersed throughout the country, with some in states that have certain prohibitions on the use of an ATDS to make calls to cellular telephones. *See, e.g.*, 815 ILCS § 305; Kan. Stat. § 50-670. So that participating class members are treated equally, the settlement provides that all participating class members are not only releasing their TCPA claims and WCA claims, but also any analogous state law claims that involve the use of automated means to place telephone calls to cellular telephones. *See* ECF No. 30-1 at 20. In other words, each participating class member is releasing the same category of claims, whether they arise under the WCA or another state analogue involving the use of an ATDS to place calls to cellular telephones. *See, e.g.*, *Burrow*, 2019 WL 4247284, at *10 ("Upon review, the Court also finds that the scope of the release provision required by the Settlement does not operate in an inequitable manner. The Settlement contemplates a release specific to the subject matter addressed in this Action—alleged design or manufacturing defects that could cause unintentional discharges—and does not contemplate a general release of any and all claims of any kind against these Defendants.").

Along those same lines, attempting to apportion the settlement fund based upon state law claims for class members across various states will be subjective and potentially unwieldy given that many of the statutes have different damages provisions. *Compare* Wis. Stat. § 425.304 (authorizing actual damages or damages of twice the amount of the finance charge in connection with the transaction, with liability not less than $100 nor greater than $1,000) *with* 815 ILCS § 305/30 (three times actual damages and statutory damages of up to $500 per violation.). Given the

foregoing, the plan of allocation proposed here is reasonable.[11]

### D. No member of the class objected to the settlement, further underscoring its reasonableness.

No class members objected to the settlement or sought exclusion from it. Moreover, no objections resulted from the CAFA notice. This universally favorable reaction to the settlement supports its approval. *See In re AT & T Mobility Wireless Data Services Sales Tax Litig.*, 789 F. Supp. 2d 935, 965 (N.D. Ill. 2011) (finding opt-out or objection by 0.01% of class members was "remarkably low" and supported the settlement); *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1021 (N.D. Ill. 2000) (that more than "99.9% of class members have neither opted out nor filed objections" to be "strong circumstantial evidence in favor of the settlements").

### II. Distribution of notice satisfied due process requirements.

Finally, Rule 23 requires "that class members be given information reasonably necessary to make a decision [whether] to remain a class member and be bound by the final judgment or opt out of the action, though the notice need not include every material fact or be overly detailed." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011).

Here, First Class used all reasonable efforts to provide direct mail notice to each member of the class. *See* Hughes Aff., at ¶¶ 6-14. The Court-approved notice apprised class members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the class and claims asserted; (3) the binding effect of a judgment if the class member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that class members may make an appearance through counsel; (5) information regarding Class Counsel's request for an award of attorneys' fees and

---

[11]     As noted *supra* n.8, only four participating class members, including Mr. Jewell, reside in Wisconsin and would therefore arguably have WCA claims.

expenses; and (6) how to make inquiries and obtain additional information. *See* ECF No. 30-1 at 28-33.

In short, this notice plan ensured that class members' due process rights were amply protected. *See* Fed. R. Civ. P. 23(c)(2)(B).

## Conclusion

Mr. Jewell respectfully requests that this Court finally approve the above-described class action settlement. As noted, neither Defendant nor any class member opposes the relief requested herein.

Dated: July 15, 2020

Respectfully submitted,

*/s/ James L. Davidson*
James L. Davidson
Greenwald Davidson Radbil PLLC
7601 N. Federal Highway, Suite A-230
Boca Raton, FL 33487
Telephone: 561.826.5477
jdavidson@gdrlawfirm.com

*/s/ Matthew C. Lein*
Matthew C. Lein
Lein Law Offices
15692 Highway 63 North
Hayward, WI 54843
Telephone: 715.634.4273
Fax: 715.634.5051
mlein@leinlawoffices.com

*Class counsel*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been electronically filed on July 15, 2020, via the Court Clerk's CM/ECF system, which will provide notice to the following counsel of record:

Daniel M. Blouin
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Counsel for Defendant

*/s/ James L. Davidson*
James L. Davidson

16